The State, *ex rel.* Yancey, *v.* Hyde.

Filed Oct. 10, 1891.

---

No. 16,126.

## THE STATE, EX REL. YANCEY, *v.* HYDE.

CONSTITUTIONAL LAW.—*Title of Laws.*—The act of February 25th, 1891, (Acts 1891, p. 29), entitled "An act creating the office of State supervisor of oil inspection, prescribing the duties thereof and providing for the appointment of such supervisor, abolishing the office of chief of the division of mineral oils and State inspector of oils, repealing all laws inconsistent therewith, and declaring an emergency," is not unconstitutional as violating the constitutional provision that " Every act shall embrace but one subject and matters properly connected therewith ; which subject shall be expressed in the title."

SAME.—*Statutory Office.*—*Termination of by Legislature.*—The term of the incumbent of a statutory office may be ended by the Legislature at any time, and provision made for the selection of his successor.

SAME.—*Abolishing Office.*—*Creation of New One.*—Where the Legislature in abolishing one office and creating another determines that the new duties to be performed or new burdens imposed are sufficient to make a

The State, *ex rel.* Yancey, *v.* Hyde.

new office, such determination will not be interfered with by the Supreme Court if the act is otherwise valid.

SAME.—*State Supervisor of Oil Inspection.—Appointment of by State Geologist.* —Under section 1, article 15, of the Constitution, providing that "All officers whose appointments are not otherwise provided for in this Constitution shall be chosen in such manner as now is, or hereafter may be, prescribed by law," the Legislature may confer upon the State geologist the power to appoint a State supervisor of oil inspection.

From the Marion Circuit Court.

*A. J. Beveridge, D. H. Chase, D. C. Justice, J. W. Vesey, O. H, Bogue, A. L. Brick, J. S. Engle, G. W. Faris, S. R. Hamill, — Bear* and *— Bear,* for appellant.

*J. E. McCullough, L. P. Harlan* and *A. G. Smith,* Attorney General, for appellee.

COFFEY, C. J.—The facts in this case, as they are disclosed by the information, are that, on the 8th day of November, 1889, the relator was appointed to the office of State inspector of oils for the State of Indiana, by the Governor, and was duly commissioned to hold his office for the period of two years from that date. He qualified on the 11th day of the same month, and entered upon the discharge of the duties of the office, and has ever since continued to discharge such duties. On the 13th day of March, 1891, the Governor appointed the relator to the office of State supervisor of oil inspection for this State, and issued to him a commission to serve for the period of four years from that date, and on the 24th day of the same month he qualified as such officer. In the month of March, 1891, whether before or after the appointment of the relator does not appear, Sylvester S. Gorby, the State geologist, appointed the appellee to the office of State supervisor of oil inspection, under the terms of an act of the General Assembly passed in 1891.

Under this appointment the appellee qualified and entered upon the discharge of the duties of said office. No commission was issued by the Governor to the appellee, nor does it appear that the commission last above mentioned, issued to

the relator, was attested by the secretary of state, or that the seal of the State was thereto attached.

This action was commenced by the appellant in the Marion Circuit Court to determine the right to the office, and to an information setting forth the above facts the court sustained a demurrer.

The propriety of this ruling presents the question for our consideration.

The last session of the General Assembly passed an act containing the following title:

"*An act* creating the office of State supervisor of oil inspection, prescribing the duties thereof, and providing for the appointment of such supervisor, abolishing the office of chief of the division of mineral oils and State inspector of oils, repealing all laws inconsistent therewith, and declaring an emergency."

The act creates the office of State supervisor of oil inspection, and provides that immediately upon the taking effect of the act the State geologist shall appoint a skilled and suitable person, a resident of the State, not interested in any way in manufacturing, dealing or vending any illuminating oils manufactured from petroleum, as State supervisor of oil inspection, whose term of office shall be for the term of four years from the date of his appointment. In case of a vacancy, at any time, the act requires the State geologist to fill the same. The State supervisor of oil inspection is subject to removal at any time by the State geologist for any neglect or violation of duty enjoined by law. The act requires the supervisor to appoint deputies, and provides that he and his deputies shall in all respects perform the duties heretofore required by law of the chief of division of mineral oils and his assistants, or State inspector of oils and his deputies, and that they shall receive therefor the same fees and compensation provided by law for the chief of the division of mineral oils and his assistants, or State inspector of oils and his deputies.

The State supervisor is required to make a report to the State geologist on the second Monday of January in each year of the inspections made by him and his deputies during the preceding year. He and his deputies are required to comply with the law in force pertaining to the inspection of oils.

The second section of the act reads as follows:

" The office of State inspector of oils, as created by section 2 of 'An act providing for the inspection of all kinds of oil that shall be used for illuminating or combustive purposes, regulating the sale of said oil, providing for certain appointments and removals to be made by the Governor, defining what shall constitute certain misdemeanors, prescribing penalties, repealing certain laws, and containing other matters properly connected therewith,' approved April 11th, 1881, as well as the office of chief of the division of mineral oils, created by section 6 of 'An act establishing a department of geology and natural resources of the State of Indiana and providing for a director of the department, abolishing the department of geology and natural history, and the office of State geologist connected therewith, abolishing the offices of mine inspector and State inspector of oils; repealing all laws or parts of laws conflicting with any of the provisions of this act and declaring an emergency,' passed over the Governor's veto and in force February 26th, 1889, are hereby abolished; and all the duties and requirements now and heretofore devolved by law upon such officers shall be performed by the State supervisor of oil inspection."

The act repeals all laws and parts of laws inconsistent with its provisions and contains an emergency clause.

It is contended by the appellant that this act is unconstitutional for the reasons:

*First.* That the same is in conflict with the provisions of section 19, article 4, of the Constitution, which reads as follows: " Every act shall embrace but one subject and mat-

ters properly connected therewith; which• subject shall be expressed in the title."

*Second.* That the General Assembly has no power, under the Constitution, to confer on the State geologist the right to appoint to the office in controversy.

*Third.* That the act is in conflict with the provisions of section 8, article 6, of the Constitution, which reads as follows: "All State, county, township, and town officers may be impeached, or removed from office, in such manner as may be prescribed by law."

The construction to be placed upon section 19, article 4, *supra,* we regard as settled by the ably written opinion in the carefully considered case of *Hingle* v. *State*, 24 Ind. 28. Expressing regrets that the cases upon the subject of the construction of this constitutional provision were in conflict, the court, after a careful review of the cases, reached the conclusion that the mischiefs intended to be prevented by this section were two, namely:

"*First.* The passage of any act under a false and delusive title, which did not indicate the subject-matter contained in the act; a trick by which members of the Legislature had been deceived into the support of measures in ignorance of their true character.

"*Second.* The combining together in one act of two or more subjects having no relation to each other; a method by which members, in order to procure such legislation as they wished, were often constrained to support and pass other measures obnoxious to them, and possessing no intrinsic merit."

The same ruling was made in the case of *Farbach* v. *State*, 24 Ind. 77.

Had the General Assembly passed a separate act entitled "An act abolishing the office of chief of the division of mineral oils, and State inspector of oils," containing the provisions found in the act before us, no one would doubt that the office previously held by the appellant was abol-

ished, and that the title was sufficiently broad to cover the act. So if it had passed a separate act entitled "An act creating the office of State supervisor of oil inspection, prescribing the duties thereof, providing for the appointment of such supervisor," followed by the provisions upon that subject found in the act before us, it could not be doubted that a new office had been created, the mode of his selection prescribed and his duties fixed, and that the title of such act was sufficient. Indeed, we do not understand the counsel for appellant as contending that the act in question is not covered by the title, but the contention is that the act does not, in fact, do what it purports to do. The argument is that an office consists of duties to be performed, services to be rendered, directions to be followed and emoluments to be received, and not in a name, and that for this reason the act does not abolish one office and create another.

Many definitions of an office are set out in the able brief filed on behalf of the appellant, but we deem it unnecessary to set them out, or to analyze them in this opinion, for assuming that the essence of an office consists of duties to be performed, services to be rendered, directions to be followed and emoluments to be received, we do not think it follows that the General Assembly, by the act under consideration, did not abolish one office and create another. In considering statutes it is our duty to ascertain, if possible, the intention of the legislative body, and when that intention is ascertained it is our duty to enforce it, unless it violates some provision of the Constitution. The case of *State, ex rel.*, v. *Wiltz*, 11 La. Ann. 439, is not in point here, for in that case it was expressly held by the court that the Legislature did not intend to abolish one office and create another, and the decision turns upon the question of the legislative intent. Here there is no doubt as to the intention of the Legislature.

As we understand the brief for the appellant, it is conceded that it was the intention to vacate the office held by

the appellant with a view of making a place for some other person, and this the Legislature undertook to do by abolishing the office held by the appellant and creating one to be filled by an appointment made by the State geologist. This, we think, was the plain intention, and this, we think, the Legislature has done, unless there is some provision of our Constitution which prohibits such legislation.

It is perfectly plain, we think, that there is now no office known as the chief of division of mineral oils, nor is there any office known by the name of the State inspector of oils, but it is equally plain that there is an office known as the office of State supervisor of oil inspection.

Offices are neither grants nor contracts, nor obligations which can not be changed or impaired. They are subject to the legislative will at all times, except so far as the Constitution may protect them from interference. Offices created by the Legislature may be abolished by the Legislature. The power that creates can destroy. The creator is greater than the creature. The term of an office may be shortened, the duties of the office increased, and the compensation lessened, by the legislative will. *Coffin* v. *State, ex rel.*, 7 Ind. 157; *Walker* v. *Dunham*, 17 Ind. 483; *Walker* v. *Peelle*, 18 Ind. 264; *Gilbert* v. *Board, etc.*, 8 Blackf. 81; *Ellis* v. *State*, 4 Ind. 1; *Jeffries* v. *Rowe*, 63 Ind. 592.

In the case of *Walker* v. *Peelle, supra*, the term of Mr. Walker, as State printer, had been shortened by an act of the Legislature. His second point in the case was that the Legislature did not possess the power to shorten his term of office, and upon this subject the court said: " Upon the second point, as to the power of the Legislature to make such enactments, we do not propose to spend much time. We suppose, as the office was created by that body, that it is, in this particular, under its control."

The power of the Legislature to shorten the term of a statutory office, so as to affect an incumbent, once conceded, it is not difficult to see that there is no limit to such power.

If it may shorten the term of a three years' office to two years, it may fix the term at one year or at one hour. In other words, the length of time a particular person shall hold is absolutely within the discretion of the Legislature.

It is not claimed that there is any constitutional provision restraining the Legislature in this matter except section 8, article 6, above set out.

In our opinion it is not the purpose of this section to control legislative action upon the subject we are now considering. It was no doubt foreseen by the Constitutional Convention that some officer of the kind named might prove unfaithful to his trust, and the purpose of this provision was, we think, to enable the Legislature to pass such laws as would authorize his removal, by legal process, whether such office was created by statute or by the Constitution then under consideration.

The effect of the act we are now considering was to put an end to the appellant's term of office, and to provide a new mode of selecting some one to discharge, at least some, if not all, of the duties theretofore discharged by the appellant, and that whether the office of State supervisor of oil inspection is to be regarded as a new office or an old office under a new name, the intention to produce this result is plain, both from the title of the act and from its provisions. In order to end the appellant's term of office we do not think it was necessary to abolish the office held by him. As it is a statutory office, it was within the power of the Legislature to end the term of the incumbent at any time, and make provision for the selection of a successor.

But we think the appellant is in error in his position that the office of supervisor of oil inspection is an old office under a new name. We think it is in fact what it purports to be, a new office. It is true that the general duties to be performed by the incumbent of this office are the same as those performed by the appellant, but it can not be said that no new duty is imposed.

The imposition of public duties, to be compensated by emoluments received by the person performing such duties, generally constitutes a public office, but it is not true that a public office may not exist without the imposition of duties or the receipt of emoluments, as plainly appears by reading the Constitution, the provisions of which we are now considering. No duties are prescribed or emoluments fixed as to many of the offices named in the Constitution, but it can not be said that, for this reason, the Constitutional Convention failed to create the office, or that the Legislature could, by a repeal of the statutes since passed fixing the duties and emoluments, abolish the offices created by the Constitution to which no duties are attached or emoluments fixed by that instrument.

The term of office in this case is changed from two to four years, the mode of selection is changed, and the incumbent is subject to removal at the will of the State geologist. As to the number of new duties to be performed or new burdens imposed which would be necessary to make a new office, we do not deem it necessary to inquire, as the Legislature has determined that those imposed in this case are sufficient for that purpose. With that determination we have no right or power to interfere provided the act is otherwise valid.

And this brings us to a consideration of the question as to whether the General Assembly may confer upon the State geologist the power to fill the office in question by appointment.

It is earnestly contended by the appellant that the General Assembly possesses no such power, and in support of his contention he relies principally upon the case of *State, ex rel.,* v. *Hyde,* 121 Ind. 20.

That was an action commenced by the State, *ex rel.* Yancey, against Hyde, to determine the right to the office of chief of the division of mineral oils. Each of the parties claimed the office under an appointment made by the director of the department of geology and natural resources of the State of

Indiana. Mr. Collett, from whom Yancey received his appointment, had been appointed and commissioned by the Governor, while Mr. Gorby, from whom Hyde received his appointment, had been elected by the General Assembly. The question at issue was as to which, if either, of the two claimants, was entitled to the office. This incidentally involved the question of the power of the General Assembly to create and fill, by its own election, the office of director of the department of geology and natural resources, and the question of the power of that officer to appoint the chief of the division of mineral oils. It was held : *First.* That the General Assembly did not possess the power, under our Constitution, to create and fill, by its own election, the office of director of the department of geology and natural resources, and, *Second.* That such officer had no power to fill, by appointment, the office of chief of the division of mineral oils.

Whatever difference of opinion existed among the members of the court, as then constituted, as to the power of the General Assembly to create and fill an office, in nowise connected with its legislative duties, there was no division of opinion as to the unconstitutionality of so much of the law then under consideration as attempted to confer on the director of the department of geology and natural resources the power to appoint the chief of the division of mineral oils. The reasons for holding this provision unconstitutional were fully set forth in the dissenting opinion filed, at the time, by ELLIOTT, C. J.

The conclusion reached that there was no valid act of the Legislature attempting to confer on the director of the department of geology and natural resources the power to appoint the chief of division of mineral oils, it must be plain to every one that the question as to whether the Legislature could or could not confer such power was not involved in the case. The conclusion that the power to fill the office

then in controversy resided in the Governor was correct, whether section 5152, R. S. 1881, was to be regarded as in force, or whether it was to be regarded as having been repealed by subsequent legislation, for, if in force, it expressly conferred such power on the Governor, and if repealed there was an absence of statutory provisions upon the subject; and it became the duty of the Governor to fill the office, under his constitutional duty to see that the laws were faithfully executed. The laws upon the subject of inspecting oils could not be executed without an officer to execute them; and if the office was vacant it was the duty of the Governor, in the absence of some other mode prescribed by law, to fill it by appointment. As to whether the argument of the learned judge who wrote the opinion in the case of *State, ex rel. Yancey,* v. *Hyde,* is sound, or otherwise, we do not stop to inquire for the reason that the conclusion reached, holding that the power to appoint to the office then in controversy belonged to the Governor, was so clearly right that the process of reasoning by which the conclusion was reached is wholly immaterial. The argument of the judge who writes an opinion is never to be confounded with the principle of law decided by the court.

In the later case of *State, ex rel.,* v. *Gorby,* 122 Ind. 17, Mr. Gorby claimed the office of director of the department of geology and natural resources by virtue of an election by the General Assembly; while Mr. Collett claimed the same office under an appointment made by the Governor of the State. The case involved the question as to whether the General Assembly of the State had the power, under our Constitution, to create an office in nowise connected with its legislative duties, and reserve to itself the right to fill such office by its own election. It was sought by Mr. Gorby to sustain the action of the General Assembly under the provisions of section 1, article 15, of our State Constitution, which reads as follows:

"All officers whose appointments are not otherwise pro-

vided for in this Constitution shall be chosen in such manner as now is, or hereafter may be, prescribed by law." It was held that this provision conferred upon the General Assembly the power to provide the manner in which certain State officers might be chosen, but that there was a broad distinction between providing the manner in which an officer might be chosen and in making the choice.

In reaching this conclusion the court relied, in some degree, upon the case of *State, ex rel.,* v. *Kennon,* 7 Ohio St. 546, in which it is said that the distinction between the power to direct the *manner,* the *mode* of doing an act, and doing the act itself, is almost too clear to admit of demonstration. Assuming that the office then in question was an administrative State office, the incumbent of which was charged with the duty of administering a department of the State government, it was further held that such incumbent, under our Constitution, should be elected by the people, and that it was the duty of the Governor of the State to fill such office by appointment until an election could be held. Having reached this conclusion, it was, perhaps, unnecessary to a decision of the cause, that anything more should have been said, but it was thought necessary to a proper understanding of the opinion delivered that some of the officers contemplated by that section of the Constitution should be named.

In that case it was said by the court in relation to offices of the nature of the one now under consideration : " In the creation of these, and kindred offices, it is within the power of the General Assembly to provide by law that such offices may be filled either by election or by appointment ; and when to be filled by appointment it need not provide that such appointment shall be made by the Governor. Such appointments, if the law so provides, could doubtless be made by the Governor of the State, or by any one or more of the administrative State officers."

What was said of officers other than the one involved in the case, being beyond the actual controversy between the

parties to the suit, was, of course, of no binding force, but it is of value, as it tends to index the mind of the court, in a matter illustrative of the actual adjudication. In this case, however, we are met squarely with the question as to whether the General Assembly possesses the power to confer on the State geologist the legal right to appoint to the office involved in this suit.  If it possesses such power the judgment of the circuit court must be affirmed, otherwise it must be reversed.

The solution of the question presented for decision depends upon the nature of the office and the construction to be placed upon this provision of our State Constitution.

The office is not an administrative State office, whose incumbent is charged with the administration of a separate department of the State government.  The duties to be performed are such as pertain purely to the police.  It is an office, therefore, which may be filled by appointment, and as the appointment of the incumbent is not provided for in the Constitution, the case falls clearly within the provisions of section 1, article 15.  That section applies to such officers only as may be appointed, and for whose appointment no provision is made in the Constitution.  As the incumbent of the office in question may be appointed, and as no provision is made in the Constitution for his appointment, the General Assembly has the power to provide by law for the manner of his selection.  It has the power to provide that such office shall be filled by popular election, or that it shall be filled by appointment.  While the appointment to office is, generally, the exercise of an executive or administrative function, we do not think it must, of necessity, be made by the Chief Executive, for by the terms of section 1, article 3, of the Constitution, the executive department of the State includes the administrative.  Of course it was not the intention that any administrative State officer should perform any duty properly and necessarily belonging to the Governor of the State, but it was, we think, the intention that such of-

ficers should have the power to perform such duties as should be required of them by law, in the administration of the State government, where such requirement in no wise conflicted with the powers delegated to the Governor alone.

The appointment to office being generally the exercise of an executive or administrative function, the power must be conferred upon some executive or administrative officer, but the State geologist is an administrative State officer, elected by the people.

The appointment to the office in controversy here by the State geologist is certainly a manner or mode of selecting an officer for whose appointment no provision is made by our Constitution. Nor does such mode of selection in any manner infringe upon the prerogatives of the Governor of the State.

There are many appointments conferred by the Constitution upon the Governor which can, in no manner, be affected by legislation. The rule upon that subject is stated by Judge Cooley, in his valuable work on Constitutional Limitations, as follows : " The authority that makes the laws has large discretion in determining the means through which they shall be executed ; and the performance of many duties which they may provide for by law they may refer either to the Chief Executive of the State, or, at their option, to any other executive or ministerial officer, or even to a person specially named for the duty. What can be definitely said on this subject is this : that such powers as are specially conferred by the Constitution upon the Governor, or upon any other specified officer, the Legislature can not require or authorize to be performed by any other officer or authority ; and from those duties which the Constitution requires of him he can not be excused by law. But other powers or duties the executive can not exercise or assume except by legislative authority, and the power which in its discretion it confers it may also in its discretion withhold, or confide

to other hands." Cooley Constitutional Limitations (6th ed.), 133.

The office involved in this controversy does not belong to the class which must of necessity be filled by the Governor, but it is an office created by statute, largely under the control of the Legislature which created it, and falls within the constitutional provision which confers upon the General Assembly the power to prescribe the mode or manner of selecting its incumbent.

In our opinion the statute now under consideration is not subject to the constitutional objections urged against it, and for that reason the circuit court did not err in sustaining the demurrer to the information in this cause.

Judgment affirmed.

Filed June 18, 1891; petition for a rehearing overruled Oct. 13, 1891.