STATE of Indiana, et al., Appellants
(Defendants Below),

v.

Robert V. MONFORT, Appellee
(Plaintiff Below).

No. 66S00–9904–CV–232.

Supreme Court of Indiana.

Jan. 26, 2000.

Rehearing Denied April 14, 2000.

See also, 663 N.E.2d 1166.

Jeffrey A. Modisett, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellants.

Michael Riley, Rensselaer, Indiana, Attorney for Appellee.

BOEHM, Justice.

We hold that the legislature may constitutionally abolish a court of general jurisdiction in this state, but, because of the separation of powers among the three branches of government, that action cannot be effective before the expiration of the term of the current judge.

**Factual and Procedural Background**

In 1995, the General Assembly passed an omnibus bill that, among other things, abolished Jasper Superior Court No. 2. *See* Pub.L. No. 18–1995, §§ 17, 44–55, 125–26, 1995 Ind. Acts 1587, 1597–99, 1640.[1] Jas-

---

1. Public Law No. 18–1995 was an omnibus court bill based on House Enrolled Act No. 1118. This Act contained provisions establishing new courts and magistrates, as well as abolishing Jasper Superior No. 2. It reads as follows:

Section 17. IC 33–4–1–37 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE UPON PASSAGE]: Sec. 37.(a) The county of Jasper shall be and constitute the thirtieth judicial circuit of the State of Indiana. (b) The Jasper circuit court has a standard small claims and misdemeanor division.

. . . .

Section 44. IC 33–5–25.5–1 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE

per Superior No. 2 had been created by the legislature in 1990 as a court of general jurisdiction. *See* Pub.L. No. 40–1990, § 30, 1990 Ind. Acts 1312. Judge Riley was initially appointed as the judge of the new court, and was then elected in 1992 to a six-year term. On December 31, 1993, Judge Riley joined the Indiana Court of Appeals and Judge Robert V. Monfort was appointed by Governor Bayh to serve out her term.

Public Law 18–1995 was signed by the Governor and became effective on May 10, 1995. On that day, Judge Monfort sued for both declaratory and injunctive relief to prevent the abolition of Jasper Superior No. 2. The trial court immediately granted a temporary restraining order and on August 1, 1995, issued a preliminary injunction preventing the termination of Jasper Superior No. 2. After various venue motions and an interlocutory appeal not relevant to the issues discussed here, the trial court entered summary judgment in favor of Judge Monfort, holding that §§ 17, 44–55, & 126 of Public Law 18–1995 were unconstitutional because they were "unwarranted and improper invasion[s] of the province of the judiciary reserved to it under the Constitution of the State of Indiana." The State appealed. In the meantime, by reason of the preliminary injunction, the position of Judge for Jasper Superior No. 2 was on the ballot in the 1998 general election and Judge Monfort was elected to that position. This Court has jurisdiction of this appeal pursuant to

Indiana Appellate Rule 4(A)8. The parties agree that there are no issues of material fact and only questions of law are presented in this appeal.

## I. Legislative Power to Create and Abolish Courts

■ Public Law No. 18–1995 is a statute purporting to abolish a court. Judge Monfort contends that if the Act is allowed to stand, it would violate Article III, § 1 of the Indiana Constitution, which provides for the separation of powers among the three branches of government. The State responds that the statute does not violate the separation of powers provision of the Indiana Constitution because under Article VII, § 1, the power to create courts—and implicitly the power to abolish them—is a legislative function, not a judicial one. In construing the Indiana Constitution, we look to "the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions." *Ajabu v. State,* 693 N.E.2d 921, 929 (Ind.1998) (quoting *Boehm v. Town of St. John,* 675 N.E.2d 318, 321 (Ind.1996)).

### A. *Constitutional Text*

The judicial power of the state is vested in the judicial branch by Article VII, § 1 of our current Constitution. This provision has been in the Indiana Constitution since its adoption in 1851 and was also found in the original Constitution of 1816.[2] The

UPON PASSAGE]: Sec. 1. There is established a court of record to be known as Jasper superior court No. 1. The court may have a seal containing the words "Jasper Superior Court No. 1, Jasper County, Indiana." Jasper County comprises the judicial district of the court.

. . . .

Section 126. [EFFECTIVE UPON PASSAGE] (a) All matters pending in the Jasper superior court No. 2, on the day before the date of passage of this act shall be transferred to the Jasper circuit court in accordance with the venue requirements prescribed under Rule 75 of the Indiana Rules of Trial Procedure. (b) These matters have the same effect as if originally filed in or

issued by the Jasper circuit court. (c) This SECTION expires July 1, 1995.

The Indiana Code section amended by section 44 formerly contained "(b) An additional court of record is established to be known as Jasper superior court No. 2. The court may have a seal containing the words 'Jasper superior court No. 2, Jasper County, Indiana.'" Sections 45–55 dealt with the judge's term, duties, etc. in both Jasper Superior Courts. P.L. 18–1995 revised these provisions to apply to one court.

**2.** Article VII, § 1 was amended in 1881 and 1970, but neither amendment is relevant to any issue presented in this case.

"first line of inquiry in any constitutional case" is the text of the constitution itself. *Ajabu,* 693 N.E.2d at 929. Article VII, § 1 states: "The judicial power of the State shall be vested in one Supreme Court, one Court of Appeals, Circuit Courts, and such other courts as the General Assembly may establish." This Court has long held that this provision means what it says. *See, e.g., Stocking v. State,* 7 Ind. 326, 328 (1855).

■■■ It is beyond dispute that the Constitution gives the legislature the power to create superior courts. Included in the power to create is the power to abolish. *See State ex rel. Yancey v. Hyde,* 129 Ind. 296, 302, 28 N.E. 186, 188 (1891) ("The power that creates can destroy."); *Mullen v. State,* 34 Ind. 540, 543 (1870) (upholding act repealing Jefferson Criminal Circuit Court because the act "is not liable to any objection which would not with equal force apply to the act creating the court."). This power is limited by the text of the Constitution, with the result that the legislature cannot entirely abolish the courts whose existence is constitutionally mandated.[3] With that exception, we believe that Article VII, § 1 confers upon the legislature the power both to create and to abolish courts.

### B. *History*

Reference to the history surrounding the drafting and ratification of the Constitution seems unnecessary in view of the clarity of the language of Article VII, § 1. In any event, if there were any doubt, the debates confirm that the issue of the legislature's power to create and destroy courts was specifically considered by the framers of the 1851 Constitution, and the conscious decision was made to give that authority to the General Assembly. Judge Borden, a Delegate for Allen, Adams, and Wells counties, expressed his concern that the proposed section, which later became Article VII, § 1, "leaves the power in the General Assembly, to create and abolish Courts of Justice, at their pleasure." 2 *Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana* 1807 (Indiana Historical Collections Reprint, 1935). He further argued:

> [T]here should be three great departments of the government[.] I hope that this Convention will endeavor, as far as it possibly can, to make each department independent of the other two.... [I]n order to secure this, several things are necessary. In the first place, ... no new Court should ever be created, or old one abolished, by the legislative department of the government; and in the next place, sir, the judiciary should not owe its existence to either of the other two departments of the government.... If the report of the committee on the organization of Courts of Justice is adopted, the General Assembly will be empowered to create and abolish at their pleasure, such inferior Courts as they may deem proper.... [T]he greatest objection to investing the legislative department with the power to create courts is, that if they can create them, they must necessarily have the power to abolish them; and thus the power is placed in two of the departments of the government to legislate the third out of office.

3. Article VII, § 7 provides that the "State shall, from time to time be divided into judicial circuits...." Under this clause, the legislature has the power to reconstitute and reorganize the circuit courts. *See State ex rel. Gibson v. Friedley,* 135 Ind. 119, 130, 34 N.E. 872, 875–76 (1893) ("The General Assembly may add to, or may take from, the territory constituting a circuit. It may create new circuits. It may abolish a circuit...."); *Car-*

*penter v. State,* 72 Ind. 331, 332 (1880) ("The Legislature may, at their discretion, change judicial circuits by adding to or taking from, and from old circuits may create entirely new ones."); *Stocking,* 7 Ind. at 328 ("[t]he legislature might create new circuits from 'time to time', as in their opinion the exigencies of business might require."). However, the legislature cannot, under the Constitution, fail to provide a court for a portion of the state.

*Id.* at 1807–08. Despite Judge Borden's concerns, the convention passed Article VII, § 1 as proposed. In view of this history, it is clear that the language was intended to confer on the legislature the power to create and abolish courts.

### C. *Separation of Powers*

■ Although the text and constitutional debates both support legislative power to abolish courts, that power is not without limitation. Constitutional provisions must be examined within the structure and purpose of the Constitution as a whole, and not in isolation. *See Welsh v. Sells,* 244 Ind. 423, 451, 193 N.E.2d 359, 361 (1963) ("The Constitution has to be read as a whole and not as a part."); *Beavers v. State,* 236 Ind. 549, 557, 141 N.E.2d 118, 122 (1957) ("If possible, the provisions of the constitution must be construed together, and not so as to create a conflict."). Judge Monfort argued, and the trial court agreed, that the separation of powers doctrine prohibits the legislature from abolishing Jasper Superior No. 2 altogether.

The separation of powers provision of the Indiana Constitution, Article III, § 1, states, "The powers of Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided." The importance of this provision was elaborated in *Book v. State Office Building Commission,* 238 Ind. 120, 149 N.E.2d 273 (1958). "Article 3, § 1, of the Constitution of Indiana is the keystone of our form of government and to maintain the division of powers as provided therein, its provisions will be strictly construed." *Id.* at 159, 149 N.E.2d at 293. "The true interpretation of this [separation of powers] is, that any one department of the government may not be controlled or even embarrassed by another department, unless so ordained in the Constitution." *In re Judicial Interpretation of 1975 Senate Enrolled Act No. 441,* 263

Ind. 350, 352, 332 N.E.2d 97, 98 (1975) (quoting *State v. Shumaker,* 200 Ind. 716, 721, 164 N.E. 408, 409 (1928)).

■ The separation of powers doctrine recognizes that each branch of the government has specific duties and powers that may not be usurped or infringed upon by the other branches of government. The judiciary is one of the three co-equal branches of government and its independence is essential to an effective running of the government. *See Board of Comm'rs v. Stout,* 136 Ind. 53, 58–59, 35 N.E. 683, 685 (1893) ("Courts are an integral part of the government, and entirely independent; deriving their powers directly from the constitution, in so far as such powers are not inherent in the very nature of the judiciary.").

In particular, it has been held in a variety of contexts that the legislature cannot interfere with the discharge of judicial duties, or attempt to control judicial functions, or otherwise dictate how the judiciary conducts its order of business. *See In re Senate Act No. 441,* 263 Ind. at 353, 332 N.E.2d at 98 (legislation prescribing qualifications for county judges is unconstitutional); *Thorpe v. King,* 248 Ind. 283, 287, 227 N.E.2d 169, 171 (1967) (legislature cannot set aside final judgment of a court); *Noble County Council v. State ex rel. Fifer,* 234 Ind. 172, 180, 125 N.E.2d 709, 713 (1955) (court has inherent authority to appoint and require payment of such personnel as the functions of the court may require); *State ex rel. Kostas v. Johnson,* 224 Ind. 540, 550, 69 N.E.2d 592, 596 (1946) (statute limiting time in which a court must rule on an issue is unconstitutional); *Gray v. McLaughlin,* 191 Ind. 190, 193, 131 N.E. 518, 519 (1921) (legislation attempting to set standards for briefs filed in Supreme Court is void); *Roberts v. Donahoe,* 191 Ind. 98, 104, 131 N.E. 33, 35 (1921) (same); *Solimeto v. State,* 188 Ind. 170, 171–72, 122 N.E. 578, 578 (1919) (same); *Parkison v. Thompson,* 164 Ind. 609, 626, 73 N.E. 109, 115 (1905) (legisla-

ture cannot dictate "the manner and mode in which the courts shall discharge their judicial duties"); *State ex rel. Hovey v. Noble,* 118 Ind. 350, 371, 21 N.E. 244, 252 (1889) (legislature cannot appoint ministers and assistants for the court).

■ These principles apply equally to superior courts once they are created, even though there is no constitutional requirement that they be established in the first place. *See Kostas,* 224 Ind. at 550–51, 69 N.E.2d at 596 (Although the Superior Court of Marion County is not identified in the Constitution, "that does not mean that it acquires its judicial power from the legislature. The legislature, under the Constitution, may create other courts than those named in the Constitution. But the Constitution alone bestows judicial power and all judicial power comes from the Constitution and is vested by it in courts and judges who can no more be interfered with by the legislature than a court or judge created by the Constitution itself."). "[T]he courts possess the entire body of the intrinsic judicial power of the State, and ... the other departments are prohibited from assuming to exercise any part of that judicial power." *Id.* at 546, 69 N.E.2d at 594 (quoting *Noble,* 118 Ind. at 354, 21 N.E. at 246).

Notwithstanding the general prohibition against interference by one branch in the functions allotted to another, some powers that arguably constitute that interference are expressly conferred by the Constitution. If so, the specific grant is, to use the phrase from *In re Senate Act 441,* 263 Ind. at 352, 332 N.E.2d at 98, "ordained in the Constitution" and is a constitutional exercise of power. Article VII, § 1 is an exam-

ple of this. In view of the explicit language of this section, we conclude that the power to create and abolish courts is among the powers given to the legislative branch.

■ The question remains whether Public Law 18–1995 nonetheless unconstitutionally interfered with the judiciary when it attempted to abolish Jasper Superior Court No. 2 in the middle of Judge Monfort's term.[4] We hold today that the legislature has the power to create and abolish superior courts, and indeed, within the limits of the Constitution, circuit courts as well. But, to do so in the middle of a judge's term violates the separation of powers provision of the Indiana Constitution. In order to preserve the very foundation on which our government was established, it is necessary to have "absolute integrity and freedom of action of courts." *Board of Comm'rs v. Albright,* 168 Ind. 564, 578, 81 N.E. 578, 582–83 (1907) (quoting *Stout,* 136 Ind. at 59, 35 N.E. at 685). "A court of general jurisdiction, whether named in the Constitution or established in pursuance of the provisions of the Constitution, cannot be directed, controlled, or impeded in its functions by any of the other departments of the government." *Id.* If the legislature can remove a sitting judge, it has the power to "direct, control, or impede" the judiciary by the threat of removing judges who make unpopular decisions, or by delivering on that threat. The resulting intimidation and potential disruption of courts entertaining issues that may be unpopular in legislative circles constitutes an impermissible intrusion into an independent judiciary.

---

4. Judge Monfort briefly discusses employment at will and the concept that he might have a contractual or vested right violated by Public Law No. 18–1995. "Offices are neither grants nor contracts, nor obligations which can not be changed or impaired. They are subject to the legislative will at all times, except so far as the Constitution may protect them from interference." *State ex rel. Yancey v. Hyde,* 129 Ind. 296, 302, 28 N.E. 186, 187–

88 (1891). Because there is no constitutional provision concerning a superior judge's term as opposed to a circuit judge's term, *see* Ind. Const. Art. VII, § 7, Judge Monfort has no personal vested or contract right in his judgeship. *See Rogers v. Calumet Nat'l Bank,* 213 Ind. 576, 585, 12 N.E.2d 261, 265 (1938); *Corn v. City of Oakland City,* 415 N.E.2d 129, 133 (Ind.Ct.App.1981).

The separation of powers provision exists not only to protect the integrity of each branch of government, but also to permit each branch to serve as an effective check on the other two. Indeed, Black's Law Dictionary defines separation of powers as "the constitutional doctrine of checks and balances by which the people are protected against tyranny." Black's Law Dictionary 1369–70 (7th ed.1999). *See Book,* 238 Ind. at 161, 149 N.E.2d at 294 ("[T]he powers of government should be so divided and balanced among several bodies of magistracy, as that no one could transcend their legal limits, without being effectually checked and restrained by the others.") (quoting Thomas Jefferson, "Notes on the State of Virginia"). The concept of an independent judiciary lies at the bedrock of the separation of powers doctrine that shapes our form of government. It was one of the central principles underlying the thinking of the framers of the Indiana Constitution and also the Constitution of the United States. As Alexander Hamilton put it in the Federalist Papers:

> The complete independence of the courts of justice is peculiarly essential in a limited Constitution. By a limited Constitution, I understand one which contains certain specified exceptions to the Legislative authority; such, for instance, as that it shall pass no bills of attainder, no *ex post facto* laws, and the like. Limitations of this kind can be preserved in practice no other way than through the medium of the courts of justice; whose duty it must be to declare all acts contrary to the manifest tenor of the Constitution void. Without this, all the reservations of particular rights or privileges would amount to nothing.
>
> . . . .
>
> [T]he courts of justice are to be considered as the bulwarks of a limited Constitution, against Legislative encroachments. . . . This independence of the Judges is equally requisite to guard the Constitution and the rights of individuals, from the effects of those ill humors which the arts of designing men, or the influence of particular conjectures, sometimes disseminate among the people themselves, and which, though they speedily give place to better information, and more deliberate reflection, have a tendency, in the meantime, to occasion dangerous innovations in the Government, and serious oppressions of the minor party in the community. . . .
>
> But it is not with a view to infractions of the Constitution only, that the independence of the Judges may be an essential safe-guard against the effects of occasional ill humors in the society. These sometimes extend no further than to the injury of the private rights of particular classes of citizens, by unjust and partial laws. Here also the firmness of the Judicial magistracy is of vast importance in mitigating the severity and confining the operation of such laws. It not only serves to moderate the immediate mischiefs of those which may have been passed, but it operates as a check upon the Legislative body in passing them; who, perceiving the obstacles to the success of an iniquitous intention are to be expected from the scruples of the courts, are in a manner compelled by the very motives of the injustice they mediate, to qualify their attempts.

The Federalist No. 78, at 426, 428–29 (E.H. Scott ed., 1894)

The same considerations undergird our state Constitution. We have long taken the view that:

> Our courts are the bulwark, the final authority which guarantees to every individual his right to breathe free, to prosper and be secure within the framework of a constitutional government. The arm which holds the scales of justice cannot be shackled or made impotent by either restraint, circumvention or denial by another branch of that government.

*State ex rel. Fifer*, 234 Ind. at 181–82, 125 N.E.2d at 714. In sum, the legislature, as a co-equal branch of government, cannot be allowed to shackle the judiciary by, at its whim, removing judges from office during their term. This statute cannot stand as written in the face of Article III, § 1 of our Constitution.

### D. *Indiana Case Law*

The sparse case law addressing the role of the legislature in abolishing courts and judgeships in midterm points in the same direction. In *State ex rel. Gibson v. Friedley*, 135 Ind. 119, 129, 34 N.E. 872, 875 (1893), this Court addressed the constitutionality of an act abolishing a circuit court. There, we held that the act was unconstitutional because it infringed upon the judge's constitutional right to a six-year term as stated in Article VII, § 7 (formerly Rev. Stat. 1881, § 169). However, this Court also stated:

> To construe this section to mean that the Legislature can, at its own will, abolish the circuit, and thus legislate the judge ... out of office, in addition to being in direct conflict with the other provisions of our organic law, would also put the official life of every judge ... of the State at the mercy of the Legislature. It would subject the judiciary to the legislative power, and utterly destroy all judicial independence. Judges ... would be at the whim or caprice of the Senators and Representatives in their tenure of office.... If the Legislature, by a special act, may remove one judge ..., it may remove any and all such officials in the State, and hence they would be at the mercy of any Legislature whose enmity or ill will they may have incurred.

*Id.* at 128–29, 34 N.E. at 875. This reasoning applies equally to superior courts even though their judges' terms are not specified in the Constitution. If the legislature is allowed to remove a superior court judge in mid-term, it presents the same potential for abuse as the removal of a circuit court judge.

The Indiana Court of Appeals addressed related issues in *Corn v. City of Oakland City*, 415 N.E.2d 129 (Ind.Ct.App.1981). In that case, the city council's attempt to abolish a city court at the end of the judge's term was upheld. In the accompanying discussion, the court acknowledged that "the legislature cannot deprive a judge of his office before the expiration of his term by abolishing his office or the court served by the judge." *Id.* at 132. The court went on to note that this rule was established in cases involving constitutional courts, the Supreme Court, the Court of Appeals, and the circuit courts, and it suggested that the rule did not apply to a city court or judgeship because they are not constitutional offices. In *Corn*, any contention based on separation of powers was waived. *Id.* at 134. However, there is authority for the proposition that the separation of powers doctrine applies only to state government and its officers, not municipal or local governments. *See Sarlls v. State ex rel. Trimble*, 201 Ind. 88, 115, 166 N.E. 270, 280 (1929). Under this view the result stated in this dicta in *Corn* was correct, even if the rationale was not. As already explained, superior courts, as courts of general jurisdiction, enjoy the same immunity as circuit courts from interference that violates the separation of powers. In any event, in *Corn*, the city judge's court was abolished after his term expired and the issue presented in this case was not presented there.

In sum, although Article VII, § 1 of the Indiana Constitution gives the legislature the power to create and abolish courts, that power is limited by Article III, § 1, which provides for the separation of powers among the three branches of Indiana government. Any attempt by the legislature to abolish a superior court in the middle of a judge's term interferes with the judicial power of the courts and is therefore unconstitutional. P.L. 18–1995 cannot stand as written.

## II. Other Challenges

 Judge Monfort challenged P.L. No. 18–1995 in the trial court on a number of grounds including that it was: an unconstitutional special law under Article IV, §§ 22 & 23, a violation of the civil rights of the parties that filed suit in Jasper Superior No. 2, an abrogation of the Governor's power, and improper judicial discipline. However, none of these issues were raised in his appellee's brief.[5] The trial court based its injunction solely on the separation of powers provision of the Indiana Constitution. Because Judge Monfort argues no other footing for affirming the decision of the trial court, and the trial court's basis for its decision is incorrect, the injunction preventing the termination of Jasper Superior No. 2 must be dissolved.

## III. Severability

 Although the portion of the legislation that sought to end Jasper Superior No. 2 in the middle of Judge Monfort's term is unconstitutional, the question remains whether the entire statute is unconstitutional, or whether the unconstitutional provision may be severed. This Court has adopted the test for severability used in *Dorchy v. Kansas,* 264 U.S. 286, 289–90, 44 S.Ct. 323, 68 L.Ed. 686 (internal citations omitted) (1924):

A statute bad in part is not necessarily void in its entirety. Provisions within the legislative power may stand if separable from the bad. But a provision, inherently unobjectionable, cannot be deemed separable unless it appears both that, standing alone, legal effect can be given to it and that the legislature intended the provision to stand, in case others included in the act and held bad should fall.

*In re Public Law No. 154–1990,* 561 N.E.2d 791, 793 (Ind.1990); *In re City of Mishawaka,* 259 Ind. 530, 533, 289 N.E.2d 510, 512 (1972). This Court must determine if "it is apparent ·[that] the Legislature would not have passed the act except as a whole," *Sarlls v. State ex rel. Trimble,* 201 Ind. 88, 100 n. 1, 166 N.E. 270, 275 n. 1 (1929), or otherwise stated, if "the Legislature would have passed the statute had it been presented without the invalid features." *State v. Kuebel,* 241 Ind. 268, 278, 172 N.E.2d 45, 50 (1961).

Public Law 18–1995 consisted of 149 sections of which only fifteen related to Jasper County. One of these, § 17, does not relate at all to the abolishment of Jasper Superior No. 2, and another, § 126, expired on July 1, 1995. In the remaining sections, the only constitutional infirmity appears in the title of each section which states, "[e]ffective upon passage" as opposed to "effective January 1, 1999," the

---

**5.** There also appear to be significant barriers to success on the merits of these arguments. First, special legislation is only unconstitutional "where a general law can be made applicable." Ind. Const. art. IV, § 23. In this case, Jasper Superior No. 2, like most superior courts, was created by a special law. It has long been held that "[u]nder § 1, article 7, it is for the legislature to determine what 'other' courts it will create, and as it enjoys this power, unhampered by section twenty-two of the legislative article, it need not enact a general law, under which courts might spring into existence where not needed, but can ordain the existence of a court in a particular county. . . ." *Board of Comm'rs v. Albright,* 168 Ind. 564, 577, 81 N.E. 578, 582 (1907); *cf. Mullen v. State,* 34 Ind. 540, 542 (1870) (act abolishing criminal circuit court does not violate constitutional provision against special laws). It is questionable whether Judge Monfort has standing to pursue the challenges based on the civil rights of the parties involved in suits in Jasper Superior No. 2 or the Governor's appointment powers. *See Pence v. State,* 652 N.E.2d 486, 488 (Ind.1995) ("For a private individual to invoke the exercise of judicial power, such person must ordinarily show that some direct injury has or will immediately be sustained."); *Deaton v. City of Greenwood,* 582 N.E.2d 882, 885 (Ind.Ct.App.1991) ("[O]ne may not assert a cause of action based solely on the infringement of the rights of others."). Finally, the act of abolishing Jasper Superior No. 2 is not judicial discipline because it does not punish Judge Monfort by removing him from office, but instead abolishes his court as we here hold, at the end of his term.

first day after the expiration of Judge Monfort's term at the time the legislation was passed. We think it is clear that the legislative intent was to abolish Jasper Superior No. 2 and that the legislature would have passed the statute without the invalid date. Accordingly, Public Law 18–1995 stands without the "effective upon passage" language of §§ 44 to 55. The remainder of Public Law 18–1995, including § 17, stands as written. Given that the survival of Jasper Superior No. 2 after 1998 was the product of the injunction issued by the trial court, that injunction should be dissolved in a fashion that permits the orderly transfer of all cases pending before Jasper Superior No. 2 to be accomplished within ninety days after the certification of this opinion.[6] No new cases should be permitted to be filed in Jasper Superior Court No. 2 after that certification.[7]

### Conclusion

The judgment of the trial court is reversed and this case is remanded for proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.

**6.** Section 125 of Public Law 18–1995, which expired on January 1, 1996, provided for payment of salaries to employees of Jasper Superior No. 2 for sixty days after the court was abolished. *See* Pub.L. No. 18–1995, § 125, 1995 Ind. Act. 1640. By reason of the trial court's injunction, this provision has not yet come into effect. Its 1996 expiration date was presumably based on the assumption that the abolition of the court and the sixty-day severance pay provision would have been accomplished by that time. Because the employees have remained in service and the timing of the dissolution of the trial court's in-junction was unpredictable, we conclude that the legislative intent to give sixty days severance pay to employees should be honored by the trial court in implementing this decision.

**7.** An opinion of the Indiana Supreme Court is to be certified as final by the Clerk of this Court when the period within which rehearing may be sought has elapsed if no petition for rehearing is filed, or if a rehearing petition is filed, when the Court issues an order or opinion disposing of the petition. Ind. Appellate Rule 15(B).