Joshua H. WOOLLEY, Appellant–
Plaintiff,

v.

WASHINGTON TOWNSHIP OF MAR-
ION COUNTY SMALL CLAIMS
COURT, Appellee–Defendant.

No. 49A05–0309–CV–485.

Court of Appeals of Indiana.

March 3, 2004.

Brandi A. Haggard, Southward & Haggard, Clifford W. Shepard, Indianapolis, IN, Attorneys for Appellant.

James S. Stephenson, Wayne E. Uhl, Stephenson, Daly, Morow & Semler, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-plaintiff Joshua Woolley appeals the trial court's grant of summary judgment in favor of appellee-defendant Washington Township of Marion County Small Claims Court (WTSCC). Specifically, Woolley contends that the trial court erred in finding that an affidavit signed by Judge Lynda Huppert, then judge of the WTSSC, was not a public record and that Woolley had no substantive relief available

to him through the Indiana Access to Public Records Act (APRA).[1] The WTSCC also asserts that Woolley's action became moot when the federal lawsuit for which the affidavit was prepared was settled and dismissed. Finding that the action is not moot, that the affidavit is not a public record, and that Woolley has no relief available to him, we affirm.

### FACTS

On October 9, 2001, a federal lawsuit was filed by attorney Clifford W. Shepard, representing Timothy W. Skaggs and others. The defendants included the law firm of Sheeks, Ittenbach & Johnson. In the latter part of 2001, attorney Charles Sheeks asked Judge Huppert to sign an affidavit that had been prepared by him or by attorney John Ittenbach in connection with the *Skaggs* case. The affidavit concerned the procedure for filing claims in the WTSCC, and it confirmed her policy that no complaint tendered for filing in her court would be rejected by the clerical staff for lack of attachments, as required by Small Claims Rule 2(B)(4). Judge Huppert read the affidavit, signed it, and returned it to Sheeks. It is undisputed that she did not retain a copy of the affidavit.

In January and February 2002, Woolley, an employee of attorney Shepard, reviewed materials involving the *Skaggs* case and learned that the attorney defendants in the case contended that the WTSCC had exempted them from compliance with Small Claims Rule 2(B)(4) and that Judge Huppert had signed an affidavit confirming this contention. On April 2, 2002, Woolley went to the WTSCC during regular business hours and verbally requested a copy of the affidavit. The WTSCC denied this request. Woolley then hand-de-

1. Indiana Code § 5–14–3.

livered a letter to the WTSCC requesting permission to inspect and copy a number of documents, including the affidavit. On April 8, 2002, Judge Huppert wrote a letter to Woolley stating that the affidavit was not a public record of the WTSCC and would not be provided. However, she pointed out that he could obtain the affidavit from Sheeks, Ittenbach, or Shepard.

On April 10, 2002, Woolley sent a letter to the Indiana Public Access Counselor describing his attempts to inspect the documents he sought. The Public Access Counselor contacted Woolley on the same day, and she informed him that she had spoken to the WTSCC, and that he would be allowed to inspect and copy the documents he requested on April 2, 2002. On April 12, 2002, Woolley went to the WTSCC to inspect and copy the documents. At that time he was given Judge Huppert's April 8 response, which Woolley then attached to another letter to the Public Access Counselor. In that letter, Woolley stated his disagreement with Judge Huppert's position that the affidavit was not a public record of the WTSCC and that it was "unacceptable" to obtain the affidavit from the attorneys because "some of the attorneys have been sued for various torts and none of the attorneys would have a duty to produce the Affidavit if I requested the same. I do not want to obtain a copy of a document I have never seen from people who are alleged tort feasors [sic]." Appellant's Br. p. 4.

On April 26, 2002, Woolley filed suit against the WTSCC under the Indiana Access to Public Records Act (APRA) to compel the WTSCC to allow him to inspect and copy the affidavit. On December 20, 2002, the parties to the *Skaggs* case filed a stipulation of dismissal with prejudice pursuant to a settlement agreement. The WTSCC moved for summary judgment on May 23, 2003, arguing that the affidavit

was not a record of the WTSCC, that there was no copy of the affidavit to produce, and that the dismissal of the *Skaggs* case rendered this matter moot. Woolley filed a cross-motion for summary judgment pursuant to Indiana Trial Rule 56(B). After a hearing, the trial court granted the WTSCC's motion and denied Woolley's motion on August 26, 2003, finding that, as a matter of law, the affidavit was not a record of the WTSCC and that the trial court could not provide Woolley any relief inasmuch as the WTSCC did not have a copy of the affidavit to produce. Woolley now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Initially, we note that when reviewing the grant or denial of a summary judgment motion, we apply the same legal standard as the trial court. *Mattingly v. Warrick County Drainage Bd.*, 743 N.E.2d 1245, 1247 (Ind.Ct.App.2001). As we stated in *Little Beverage Co., Inc. v. DePrez*, 777 N.E.2d 74, 77–78 (Ind.Ct.App.2002):

[S]ummary judgment is appropriate when no designated genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Our standard of review is not altered by cross motions for summary judgment on the same issues. A party appealing the denial of summary judgment carries the burden of persuading this court that the trial court's decision was erroneous. The movant must demonstrate the absence of any genuine issue of fact as to a determinative issue and only then is the non-movant required to come forward with contrary evidence. This court may not search the entire record but may only consider the evidence that has been specifically designated. All pleadings, affidavits, and testimony are construed liberally

and in a light most favorable to the nonmoving party.

(citations omitted).

## II. Mootness

Before we can address the merits of Woolley's arguments, we must first address the WTSCC's contention that Woolley's appeal is moot inasmuch as the *Skaggs* case was settled and dismissed. An issue becomes moot when it is no longer live and the parties lack a legally cognizable interest in the outcome or when no effective relief can be rendered to the parties. *Indiana High School Athletic Ass'n v. Durham,* 748 N.E.2d 404, 411 (Ind.Ct. App.2001). When the principal questions in issue have ceased to be matters of real controversy between the parties, the errors assigned become moot questions, and the court will not retain jurisdiction to decide them. *Id.*

The WTSCC argues that "[t]he link between this action and the federal lawsuit, *Skaggs,* is undeniable" inasmuch as Woolley worked for Shepard, who was the attorney for the plaintiffs in the case against Ittenbach, Sheeks and their firm, and the affidavit was part of the defense of the *Skaggs* lawsuit. Appellee's Br. p. 13. However, Woolley has maintained throughout the litigation that Shepard "did not ask, request nor direct me to obtain a copy of Judge Huppert's Affidavit." Appellant's App. p. 58. Woolley stated in an affidavit that he "wanted the document, and other documents, for my own purposes as a citizen of the State of Indiana." Appellant's App. p. 58. The WTSCC does not cite to, nor has our research uncovered, any case in which the dismissal of a lawsuit rendered moot a request for access to public records. Woolley was not required to state a reason for his request, and we will not now ascribe one to him in order to dismiss his appeal. There is still a live issue as to whether Woolley may rightfully have access to the affidavit, and, therefore, the WTSCC's argument must fail.

## III. Public Record

Woolley first argues that the affidavit is a public record, which therefore must be produced so that he may inspect and copy it. Specifically, he contends that Judge Huppert received the affidavit in her official capacity as the elected judge of the WTSCC, which makes the affidavit a public record of the WTSCC.

### A. Statutory Interpretation

Initially, we note that "it is the public policy of the state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees." Ind.Code § 5–14–3–1. The APRA defines "public record" as follows:

> "Public record" means any writing, paper, report, study, map, photograph, book, card, tape recording, or other material that is created, received, retained, maintained, used [2] or filed by or with a public agency and which is generated on paper, paper substitutes, photographic media, chemically based media, magnetic or machine readable media, electronically stored data, or any other material, regardless of form or characteristics.

I.C. § 5–14–3–2. Additionally, a "public agency" is "any board, commission, department, division, bureau, committee, agency, office, instrumentality, or authority, by whatever name designated, exercising any part of the executive, administrative, judicial, or legislative power of the state." *Id.*

---

**2.** The statute included "used" at the time of this litigation, but it was amended in 2003 to delete that word. P.L. 261–2003 (effective May 8, 2003).

We agree with the trial court that the WTSCC is a public agency, inasmuch as it exercises the judicial power of the state. Moreover, the affidavit is clearly a writing. The question is whether the affidavit was "created, received, retained, maintained, used or filed by or with" the WTSCC. It is beyond dispute that the WTSCC did not create the affidavit; it was created by either Sheeks or Ittenbach. Nor can it reasonably be said that the WTSCC retained, maintained, or filed the affidavit inasmuch as it was in the WTSCC only long enough for Judge Huppert to read and sign it.

■ Woolley argues that Judge Huppert "received" the affidavit because it was in her possession "at some point," Appellee's Br. p. 17, and therefore it became a public record of the WTSCC. However, we note that "receive" means "to take into possession and control." Black's Law Dictionary 1268 (6th ed.). As stated above, Judge Huppert only had the affidavit long enough to read and sign it before giving it back to Sheeks. The fact that she immediately returned the affidavit without retaining a copy for herself demonstrates that Judge Huppert did not have control over the affidavit, and therefore this does not rise to the level of having "possession and control" of the affidavit. Thus, it cannot reasonably be concluded that the WTSCC "received" the affidavit. Were we to accept Woolley's definition of "receive," every piece of paper that comes through the doors of every public agency, no matter how brief the time that it remains there, would have to be filed and maintained so that it could be inspected and copied, including junk mail and affidavits tendered to a judge. This result is impractical and exceeds a clear reading of the APRA.

Additionally, we note that Judge Huppert signed this affidavit as a witness in the *Skaggs* case. She was not acting in her official capacity as the judge of the WTSCC. Simply because the subject of the affidavit happened to be the internal procedures employed in her court does not therefore render the affidavit a public record. Judge Huppert was simply attesting to facts that were within her personal knowledge, much like a witness who saw the blue car run the red light in a personal injury case.

Another form of discovery provides a useful analogy. Had Sheeks and Ittenbach deposed Judge Huppert at their law office, they could have elicited from her the same information that was provided in the affidavit. However, that deposition testimony could not be considered a public record of the WTSCC because it was not "created, received, retained, maintained, used or filed by or with" the WTSCC by any stretch of the imagination. Nor should the fact that Judge Huppert signed the affidavit in her own office at the WTSCC render the same information a public record. We conclude, based upon our reading of the APRA, that Judge Huppert's affidavit was not a public record.

### B. Indiana Constitutional Issues

■ We also note that Woolley's reading of the APRA creates a problem under the separation of powers doctrine. Article 3, Section 1 of the Indiana Constitution states, "The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial: and no person, charged with official duties under one of these departments shall exercise any of the functions of another, except as in this Constitution expressly provided." The separation of powers doctrine recognizes that each branch of the government has specific duties and powers that may not be usurped or infringed upon by the other branches of

government. *State v. Monfort,* 723 N.E.2d 407, 411 (Ind.2000). Indeed, the framers of our 1816 and 1851 constitutions regarded the separation of powers as so essential that they explicitly established the separation in its own article. Ind. const. of 1816, art. II; Ind. const., art III, § 1. The judiciary is one of the three co-equal branches of government and its independence is essential to an effective running of the government. *Monfort,* 723 N.E.2d at 411.

Our supreme court "has held repeatedly that courts should not intermeddle with the internal functions of either the Executive or Legislative branches of Government." *State ex rel. Masariu v. Marion Superior Court No. 1.,* 621 N.E.2d 1097, 1098 (Ind.1993). *See also Bradley v. City of New Castle,* 764 N.E.2d 212, 217 (Ind. 2002); *Roeschlein v. Thomas,* 258 Ind. 16, 280 N.E.2d 581 (1972). It is equally true that the Executive and Legislative branches of Government may not intermeddle with the internal functions of the Judiciary.

[I]t has been held in a variety of contexts that the legislature cannot interfere with the discharge of judicial duties, or attempt to control judicial functions, or otherwise dictate how the judiciary conducts its order of business. *See In re Senate Act No. 441,* 263 Ind. [350] at 353, 332 N.E.2d [97] at 98 [ (1975) ] (legislation prescribing qualifications for county judges is unconstitutional); *Thorpe v. King,* 248 Ind. 283, 287, 227 N.E.2d 169, 171 (1967) (legislature cannot set aside final judgment of a court); *Noble County Council v. State ex rel. Fifer,* 234 Ind. 172, 180, 125 N.E.2d 709, 713 (1955) (court has inherent authority to appoint and require payment of such personnel as the functions of the court may require); *State ex rel. Kostas v. Johnson,* 224 Ind. 540, 550, 69 N.E.2d 592, 596 (1946) (statute limiting time in which a court must rule on an issue is

unconstitutional); *Gray v. McLaughlin,* 191 Ind. 190, 193, 131 N.E. 518, 519 (1921) (legislation attempting to set standards for briefs filed in Supreme Court is void); *Roberts v. Donahoe,* 191 Ind. 98, 104, 131 N.E. 33, 35 (1921) (same); *Solimeto v. State,* 188 Ind. 170, 171–72, 122 N.E. 578, 578 (1919) (same); *Parkison v. Thompson,* 164 Ind. 609, 626, 73 N.E. 109, 115 (1905) (legislature cannot dictate "the manner and mode in which the courts shall discharge their judicial duties"); *State ex rel. Hovey v. Noble,* 118 Ind. 350, 371, 21 N.E. 244, 252 (1889) (legislature cannot appoint ministers and assistants for the court).

*Monfort,* 723 N.E.2d at 412–13. *See Dunn v. State ex rel. Corydon,* 204 Ind. 390, 184 N.E. 535 (1933) ("the Legislature has no power or authority to curtail and hamper the courts in the exercise of their lawful duties, and that the court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction. . . .") Moreover, it has long been the law of Indiana that our courts speak through their order books. *State v. Daniels,* 680 N.E.2d 829, 834 (Ind.1997); *Albright v. Pyle,* 634 N.E.2d 69, 70 (Ind.Ct.App.1994); *State Farm Mut. Auto. Ins. v. Glasgow,* 478 N.E.2d 918, 924 (Ind.Ct.App.1985); *O'Malia v. State,* 207 Ind. 308, 192 N.E. 435, 436 (1934).

If we accepted Woolley's argument, the legislature would interfere with the administration of justice within Judge Huppert's courtroom inasmuch as the affidavit that Woolley claims that the APRA requires the WTSCC to provide him describes an internal policy of Judge Huppert's court. This is beyond the province of the legislature. As stated above, courts speak publicly through their order books. *Daniels,* 680 N.E.2d at 834. The documents that are to be included in court records are

defined by our supreme court in Trial Rule 77, not by the legislature. If the APRA required the WTSCC to produce a document describing the inner workings and administration of that court, it might also require judges to produce any email or notes taken during discussion with their colleagues, and the communication necessary for the free flow of the administration of justice would end. The legislature may not hamper the courts in the exercise of their lawful duties in this manner. Thus, Woolley's argument must fail.

### IV. Available Relief

Finally, Woolley contends that the trial court erred in holding, as a matter of law, that he had no substantive relief available to him. Specifically, he argues that he can substantially prevail because the WTSSC failed to provide him with a specific statutory exemption from the disclosure requirements of the APRA.

Indiana Code section 5–14–3–9 provides, in pertinent part:

(a) A denial of disclosure by a public agency occurs when the person making the request is physically present in the office of the agency, makes the request by telephone, or requests enhanced access to a document and:

(1) the person designated by the public agency as being responsible for public records release decisions refuses to permit inspection and copying *of a public record* when a request has been made; or

(2) twenty-four (24) hours elapse after any employee of the public agency refuses to permit inspection and copying *of a public record* when a request has been made; whichever occurs first.

(b) If a person requests by mail or by facsimile a copy or copies of a public record, a denial of disclosure does not occur *until seven (7) days have elapsed from the date the public agency receives the request.*

(c) If a request is made orally, either in person or by telephone, a public agency may deny the request orally. However, if a request initially is made in writing, by facsimile, or through enhanced access, or if an oral request that has been denied is renewed in writing or by facsimile, a public agency may deny the request if:

(1) the denial is in writing or by facsimile; and

(2) the denial includes:

(A) *a statement of the specific exemption or exemptions authorizing the withholding of all or part of the public record;* and

(B) the name and the title or position of the person responsible for the denial.

. . .

(i) In any action filed under this section, a court shall award reasonable attorney's fees, court costs, and other reasonable expenses of litigation to the prevailing party if:

(1) *the plaintiff substantially prevails;* or

(2) the defendant substantially prevails and the court finds the action was frivolous or vexatious.

(Emphasis added).

Woolley contends that because he originally made an oral request, which was denied, and he renewed that request in writing, which was denied in writing more than seven days later without stating the specific exemption authorizing the withholding of the document, he can substantially prevail by showing that the WTSCC violated the APRA. However, Woolley's arguments stem from the premise that the

affidavit at issue is a public record. Only public records are governed by the APRA by the specific language of Indiana Code section 5–14–3–9(a). Because we have determined that it is not a public record, the WTSCC was not required to follow the mandates of the APRA with regard to the timeliness of their response and a reason for denying Woolley's request. Even more compelling, the WTSCC simply does not have a copy of the affidavit. Quite simply, the WTSCC cannot produce what it does not possess. Inasmuch as the affidavit is not a public record and it is impossible for the WTSCC to produce it, the trial court can provide Woolley with no relief. We therefore find that the trial court did not err in finding that Woolley had no relief available to him.

## CONCLUSION

In light of the above discussion, we find that this action is not moot. We further find that the APRA does not require and the Indiana constitution prohibits the WTSCC from being compelled to produce the affidavit describing the internal procedures of the court. Finally, we find that Woolley cannot substantially prevail, and thus he has no relief available to him.

The judgment of the trial court is affirmed.

NAJAM, J., and MAY, J., concur.