**BILIMORIA COMPUTER SYSTEMS, LLC, Appellant–Plaintiff,**

v.

**AMERICA ONLINE, INC., Appellee–Defendant.**

No. 45A03–0409–CV–420.

Court of Appeals of Indiana.

June 14, 2005.

Michael L. Muenich, Highland, for Appellant.

Robert J. Palmer, W. Todd Woelfer, May Oberfell & Lorber, South Bend, for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Bilimoria Computer Systems, LLC ("Bilimoria") appeals the grant of summary judgment in favor of Appellee–Defendant America Online, Inc. ("AOL") on Bilimoria's claims of fraud and tortious interference with contract. We affirm.

### Issues

Bilimoria presents two issues for review:

I.  Whether the trial court erroneously granted partial summary judgment to AOL on Bilimoria's claim of fraud; and

II. Whether the trial court erroneously granted partial summary judgment to AOL on Bilimoria's claim of tortious interference with contract.

## Facts and Procedural History

Here, the trial court was confronted with the issue of which of the commercial parties involved should bear the losses resulting from a Nigerian-based counterfeit check scheme. Yaz and Firoza Bilimoria are the shareholders of Bilimoria, an Indiana corporation that sells computer components, primarily to school corporations. In the course of conducting business, Bilimoria received several counterfeit checks that were initially honored as valid checks by the banks involved, and later dishonored. Eventually, Bilimoria received the use of the funds from the checks. However, Bilimoria claimed that the delay adversely affected Bilimoria's credit and ability to conduct business.

In 2001, Bilimoria received orders for printer cartridges from a Nigerian entity identifying itself as America Online (West Africa) Ltd. Bilimoria also received checks purportedly drawn on AOL's checking account with Chase Manhattan Bank ("Chase"), which Bilimoria deposited into its checking account with Sand Ridge Bank ("Sand Ridge").[1] Prior to shipping computer components, Bilimoria made initial inquiries to Sand Ridge about the validity of the checks. Sand Ridge advised Bilimoria that the funds from the checks were available, based upon clearance from Chase.

However, Chase determined that certain checks were duplicates and not accompa-nied by Issuance Information contemplated by AOL's agreement with Chase. Chase contacted AOL about the discovery. Apparently, an AOL accountant verbally directed the payment of the checks because the image appeared identical to the AOL format.[2]

On March 20, 2001, Sand Ridge Vice President Michael Troxell ("Troxell") received a telephone call from Federal Bureau of Investigation Agent James Jewel, who indicated that Bilimoria was dealing with a Nigerian entity allegedly involved in a counterfeiting scheme. On March 23, 2001, Troxell received a telephone call from Maryellen Ashe ("Ashe") of Chase's New York fraud department. Ashe informed Troxell that AOL claimed a series of nine checks deposited by Bilimoria as checks drawn on AOL's Chase account were counterfeit. Ashe requested that the funds in Bilimoria's Sand Ridge account be "frozen." (App.296.) On March 27, 2001, Troxell informed Bilimoria that the funds in checking account 00410993 were "frozen." (App.102, 209, 758.)

Bilimoria unsuccessfully demanded, via telephone calls and letters to Sand Ridge, the release of its checking account funds. On March 30, 2001, Chase issued a letter to Sand Ridge, requesting remittance of $364,500.50 from Bilimoria's checking account, and agreeing to indemnify Sand Ridge for losses caused by compliance with

---

1. The most recent of the checks deposited were # 284975 in the amount of $47,900, deposited February 21, 2001; # 284977 in the amount of $49,200, deposited March 6, 2001 and # 284981 in the amount of $48,500, deposited March 15, 2001. Bilimoria received additional checks and did not attempt to deposit them, but delivered them to Sand Ridge to assist in the counterfeit investigation.

2. AOL employee Christopher Roberts testified in his deposition, in pertinent part, as follows: "These fraudulent checks cleared the account due to problems with our positive pay transmission to Chase during one week in November. We sent the files to Chase, however, they were not imported into their system correctly. An accountant in our group was notified by Chase that the check was a duplicate check number, however, she approved the check for payment. The check image looked like our AOL check format. Chase is in the process of researching the forgery and this will take between three to six months to complete." (Tr. 646.)

the request. Thereafter, Sand Ridge maintained its refusal to release the funds to Bilimoria. On April 19, 2001, Bilimoria filed a complaint against Sand Ridge, alleging a violation of federal banking regulations, breach of contract, theft and conversion.

On July 26, 2001, AOL filed its motion to intervene. On July 30, 2001, Bilimoria moved for summary judgment against Sand Ridge. On August 6, 2001, AOL filed a motion for a preliminary injunction, seeking to restrain Bilimoria and Sand Ridge from disposing of the checking account funds. AOL alleged that Bilimoria converted approximately $254,541.52 of AOL funds before the fraud was discovered. On August 19, 2001, the trial court denied temporary injunctive relief. On August 28, 2001, the trial court granted AOL permission to intervene. Contemporaneously, the trial court permitted the filing of AOL's counterclaim against Bilimoria, seeking rescission and alleging Bilimoria's breach of presentment warranties, conversion and fraud.

During September of 2001, Bilimoria filed its Second Amended Complaint, alleging Sand Ridge's violation of federal banking regulations, breach of contract, theft and conversion. On October 9, 2001, AOL filed a memorandum in opposition to Bilimoria's motion for summary judgment, an affidavit [3] and designation of evidentiary materials. On October 30, 2001, the trial court granted summary judgment against Sand Ridge on Bilimoria's breach of contract and statutory claims, stating in pertinent part as follows:

There is no genuine issue of material fact as to Defendant, Sand Ridge Bank's, breach of contract, statutory and banking regulations in refusing to release the money to Plaintiff on these checks. The only issue that remains is the amount of damages to be awarded against Defendant, Sand Ridge Bank.

(App.578.) AOL filed successive notices of adverse claim, and Sand Ridge did not release the checking account funds until December 4, 2001.

On April 17, 2002, Bilimoria filed its Third Amended Complaint, presenting a claim for indemnification against Sand Ridge, in addition to its earlier claims. On June 4, 2002, Bilimoria filed a counterclaim against AOL, alleging malicious prosecution and abuse of process.

On January 31, 2003, the trial court granted Bilimoria permission to amend its complaint. Bilimoria's Fourth Amended Complaint alleged Sand Ridge violated federal banking regulations, breached the depository contract, and committed theft, conversion and fraud. The complaint alleged that AOL committed fraud, intentional interference with contract, and abuse of process. On March 3, 2003, AOL moved to dismiss the fraud and tortious interference with contract claims against it; the motion was denied. On June 2, 2004, Sand Ridge moved for summary judgment and designated supporting materials. On June 9, 2004, AOL filed a motion for partial summary judgment and designated supporting materials. On July 20, 2004, the trial court held a summary judgment hearing.

---

**3.** The Affidavit of Brian Hargreaves, Vice President and Assistant Controller of AOL, indicated that AOL is a Delaware corporation with its principal place of business located in Dulles, Virginia, and does not have any subsidiary or corporate affiliate in Lagos, Nigeria and is not related to an entity operating under the name "America Online (West Africa) LTD." (App.257.) According to Hargreaves, a number of checks payable to Bilimoria were investigated and determined to be counterfeit.

On August 17, 2004, the trial court directed the entry of final judgment on its order of October 30, 2001 finding Sand Ridge liable for breach of contract. Also on August 17, 2004, the trial court granted Sand Ridge's motion for summary judgment on Bilimoria's theft and conversion claims, but denied summary judgment to Sand Ridge on Bilimoria's fraud claim. Specifically, the trial court found there existed "a genuine issue of material fact as to the knowledge and conduct of the Sand Ridge Bank's agents and employees in reversing its position as to the availability of the money in BCS's account and whether or not Sand Ridge Bank's conduct from October 31, 2001, to December 4, 2001, amounted to callous or reckless disregard of BCS's rights." (App.33.) The trial court granted summary judgment to AOL on Bilimoria's fraud and tortious interference with contract claims. On August 20, 2004, the trial court directed the entry of final judgment of the August 17, 2004 order, finding no just cause for delay.

Bilimoria initiated an appeal, and Sand Ridge cross-appealed. On February 11, 2005, Bilimoria and Sand Ridge filed a Motion for Voluntary Dismissal pursuant to Rule 36(A) of the Indiana Rules of Appellate Procedure. On February 18, 2005, Bilimoria filed in the trial court its Trial Rule 41(A)(2) motion for dismissal of some claims. Bilimoria notified the trial court that Bilimoria and Sand Ridge entered into a Loan Agreement, Settlement Agreement and a Covenant Not to Execute.

On February 22, 2005, this Court issued an order providing in pertinent part as follows:

> IT IS THEREFORE ORDERED that upon the above-recited Motion, the following portions of this appeal are now dismissed: (1) the Appellant's appeal of claims raised against Sand Ridge Bank in Counts I, III and IV of the Appellant's Fourth Amended Complaint and the claims raised against Sand Ridge Bank in Count V of the Fourth Amended Complaint, and (2) Sand Ridge Bank's cross-appeal.

> This appeal will remain pending as between the Appellant and America Online, Inc. relating to the claims raised in Count V and Count VI of the Fourth Amended Complaint as adjudicated by the trial court in its judgment of August 17, 2004.

On March 9, 2005, the trial court issued an order of dismissal with respect to Bilimoria's claims against Sand Ridge, and specified that the dismissal did not affect Bilimoria's claims against AOL in Count V (fraud), Count VI (intentional interference with contract), and Count VII (abuse of process). Bilimoria's abuse of process claim is pending. We address the propriety of the trial court's partial summary judgment orders as to fraud and intentional interference with contract.

## Discussion and Decision

### I. Summary Judgment on Fraud Claim

#### A. Standard of Review

Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. On review of a trial court's grant or denial of summary judgment, this Court applies the same standard as the trial court. Best Homes, Inc. v. Rainwater, 714 N.E.2d 702, 705 (Ind.Ct.App.1999). We must determine whether there is a genuine issue of material fact requiring trial, and whether the moving party is entitled to judgment as a matter of law. Id. Neither the trial court nor the reviewing court may look beyond the evidence

specifically designated to the trial court. *Id.; see also* Ind. Trial Rule 56(C), (H).

A party seeking summary judgment bears the burden to make a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Am. Mgmt., Inc. v. MIF Realty L.P.*, 666 N.E.2d 424, 428 (Ind.Ct.App.1996). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the non-moving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Id.* The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 461 (Ind.2002).

On appeal, the appellant bears the burden of persuasion, but we will assess the trial court's decision to ensure that the parties were not improperly denied their day in court. *Indiana Health Centers, Inc. v. Cardinal Health Systems, Inc.*, 774 N.E.2d 992, 999 (Ind.Ct.App.2002). A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Cansler v. Mills*, 765 N.E.2d 698, 701 (Ind.Ct.App.2002), *trans. denied.*

### B. Analysis

In its Fourth Amended Complaint, Bilimoria alleged that Sand Ridge, AOL and Chase Manhattan (as AOL's agent) "made material misrepresentations of existing fact to Bilimoria indicating that Chase Manhattan had made final payment on the AOL Checks and that AOL would pay the amounts due under the AOL checks." (App.704.)

■ The elements of actual fraud are as follows:

(1) a material representation of past or existing facts which

(2) was false,

(3) was made with knowledge or reckless ignorance of its falsity,

(4) was made with the intent to deceive,

(5) was rightfully relied upon by the complaining party, and

(6) proximately caused injury to the complaining party.

*Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 889 (Ind.Ct.App.2000). Actual fraud may not be based on representations of future conduct, on broken promises, or on representations of existing intent that are not executed. *Id.*

■ Here, AOL established its entitlement to judgment as a matter of law because AOL made no representation of a past or existing fact to Bilimoria. In the portion of his deposition designated to the trial court by AOL, Yaz Bilimoria stated that his company did not have direct contact with AOL. As such, AOL did not make a representation to Bilimoria upon which Bilimoria was entitled to rely.

In an effort to withstand summary judgment on the fraud claim, Bilimoria argued that AOL made a false and material misrepresentation "by affirmatively directing payment through the procedure detailed in the Positive Pay Agreement." (App.813.) However, Bilimoria did not identify a genuine issue of material fact precluding summary judgment on the fraud claim. AOL's directive to Chase to honor its checks does not amount to a reckless or knowingly false representation of fact made with intent to deceive, rightfully relied upon by Bilimoria, the complaining party. Too, the

summary judgment record does not support an inference that a representation of check validity by any party was made with intent to deceive. Inasmuch as AOL negated an essential element of Bilimoria's fraud claim—a material misrepresentation of past or existing fact—partial summary judgment was properly granted against Bilimoria.

## II. Tortious Interference with Contract

Bilimoria established its entitlement to judgment as a matter of law on its claim that Sand Ridge breached the depository contract.[4] In its Fourth Amended Complaint, Bilimoria alleged that the breach occurred because AOL (and its agent, Chase) "without justification ... intentionally induced Sand Ridge to breach its depository contract with Bilimoria." (App. 705.) In granting partial summary judgment to AOL, the trial court observed that AOL did not have contact with Sand Ridge but did not address whether Chase contacted Sand Ridge as AOL's agent.

■■■ Contract law protects contractual interests under an agreement; tort law provides additional protection in some circumstances. *Indiana Health Centers*, 774 N.E.2d at 992. In contrast to a breach of contract claim, which does not necessarily involve intentional wrongdoing, a claim of intentional interference with contract is established only when there is tortious conduct, i.e., that which is intentional and unjustified. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1234 (Ind.1994). Indiana has long recognized that intentional interference with a contract is an actionable tort. *Id.* The tort reflects the public policy that contract rights are property, and under proper circumstances, parties are entitled to enforcement and protection

from those who tortiously interfere with those rights. *Id.*

■■■ The five elements necessary for recovery for tortious interference with a contractual relationship are: (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach. *Id.* at 1235.

■■■ Justifiability of conduct involves consideration of the following factors:

(a) the nature of the defendant's conduct;

(b) the defendant's motive;

(c) the interests of the plaintiff with which the defendant's conduct interferes;

(d) the interests sought to be advanced by the defendant;

(e) the social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff;

(f) the proximity or remoteness of the defendant's conduct to the interference; and

(g) the relations between the parties.

*Id.* at 1234. The weight to be given each consideration may differ from case to case, but the overriding question is whether the defendant's conduct has been fair and reasonable under the circumstances. *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 252 (Ind.Ct.App. 2001), *trans. denied.*

■■■ Here, the designated materials indicate that AOL negated the element of absence of justification. This element is established only if the interferer acted in-

---

**4.** Subsequent to this Court's dismissal order of February 22, 2005, the trial court's order of October 31, 2001 is not on appeal.

tentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another. *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind.Ct.App.2000); *see also Flintridge Station Assoc. v. Am. Fletcher Mortgage Co.*, 761 F.2d 434, 441 (7th Cir. 1985) (defining, in part, "unjustified" as "disinterested malevolence.") The existence of a legitimate reason for the defendant's actions provides the necessary justification to avoid liability. *Morgan*, 736 N.E.2d at 1272.

With regard to absence of justification, only a single inference may be drawn from the facts and circumstances presented in the record of designated materials as to the reasonableness of AOL's conduct. AOL did not communicate with Sand Ridge prior to the breach and ensuing litigation. Assuming that Chase communicated with Sand Ridge as AOL's agent to induce "freezing" the account, it did so in the midst of an active investigation into a counterfeiting scheme. Thus, there existed a legitimate business purpose for the communication and it was not exclusively directed to the injury and damage of Bilimoria. Partial summary judgment was properly granted to AOL on Bilimoria's claim of tortious interference with contract.

### Conclusion

Based upon the foregoing discussion, the trial court properly granted summary judgment to AOL on Bilimoria's claims of fraud and tortious interference with contract.

Affirmed.

FRIEDLANDER, J., and ROBB, J., concur.