Joan STOFFEL, Individually and as Named Representative of the Class of Township Assessors, Appellants–Plaintiffs,

v.

Governor Mitchell E. DANIELS, Jr., State of Indiana, Commissioner Cheryl Musgrave, Indiana Department of Local Government Finance, Huntington County, Indiana, Board of County Commissioners of Huntington County, Richard Brubaker, Jerry Helvie And Larry Buzzard, in their respective capacities as Huntington County Commissioners, Huntington County Council, Kathy Branham, Felicia Staley, Dave Davenriner, John Hacker, Jerry Harvey, Christi Scher and Robert Miller, in their capacities as members of the Huntington County Council, and Terri Boone, in her capacity as Huntington County Assessor, Appellees–Defendants.

No. 35A05–0902–CV–87.

Court of Appeals of Indiana.

July 13, 2009.

John R. Price, Price Owen Law, Indianapolis, IN, Attorney for Appellants.

Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, Joan Stoffel, Individually and as Named Representative of Class of Indiana Township Assessors (Stoffel), appeal the trial court's Findings of Fact, Conclusions of Law, and Judgment on their Verified Complaint for Declaratory and Injunctive Relief. In its Judgment, the trial court granted Appellees–Defendants', Governor Mitchell E. Daniels, Jr., State of Indiana; Commissioner Cheryl Musgrave; the Indiana Department of Local Government Finance; Huntington County, Indiana, et al.,[1] Motion to Dismiss.

We affirm.

### ISSUES

Stoffel raises four issues on appeal, which we restate as:

(1) Whether the trial court properly decided that the legislature has the authority to create, abolish and alter the duties of township officers during the middle of their term in office;

(2) Whether the trial court properly denied Stoffel's claim based on the theory of tortious interference;

(3) Whether the trial court properly decided that Stoffel failed to present a redressable claim; and

(4) Whether the trial court properly found that Stoffel failed to establish the prerequisites for being granted preliminary injunctive relief.

### FACTS AND PROCEDURAL HISTORY

In the General Election of November of 2006, Stoffel was re-elected to be the Township Assessor for Huntington Township in Huntington County, Indiana. She has held this position since 1995 and her current term in office, as well as all other 181 Indiana elected township assessor positions, commenced on January 1, 2007 and runs for four years through December 31, 2010.

The position of township assessor is statutorily governed by Indiana Code section 36–6–5. Prior to the adoption of House Enrolled Act (HEA) 1001/P.L. 146–2008, Indiana Code section 36–6–5–1(a) mandated that a township assessor must be elected by the voters of each township having a population of more than eight thousand; or an elected township assessor or the authority to elect a township assessor before January 1, 1979. In 2008, the statute was amended by two acts of the Indiana General Assembly: HEA 1137, Sec. 262 and HEA 1001/P.L. 146–2008, Sec. 710. Since July 1, 2008 and as a result of these amendments, the statute reads as follows:

Sec. 1 (a) ... before 2009, a township assessor shall be elected under I.C. [§ ] 3–10–2–13 by the voters of each township:

(1) having:

(A) a population of more than eight thousand (8,000); or

(B) an elected township assessor or the authority to elect a township assessor before January 1, 1979; and

---

1. Stoffel's Complaint also named as defendants certain officials from Huntington County; however, this appeal involves only the State Defendants.

(2) in which the number of parcels of real property on January 1, 2008, is at least fifteen thousand (15,000).

(b) ... before 2009, a township assessor shall be elected under I.C. [§ ] 3–10–2–14 in each township:

(1) having a population of more than five thousand (5,000) but not more than eight thousand (8,000), if the legislative body of the township:

(A) by resolution, declares that the office of township assessor is necessary; and

(B) the resolution is filed with the county election board not later than the first date that a declaration of candidacy may be filed under I.C.[§ ] 3–8–2; and

(2) in which the number of parcels of real property on January 1, 2008, is at least fifteen thousand (15,000)

. . .

(d) ... after 2008 a township assessor shall be elected under I.C. [§ ] 3–10–2–13 only by the voters of each township in which:

(1) the number of parcels of real property on January 1, 2008, is at least fifteen thousand (15,000); and

(2) the transfer to the county assessor of the assessment duties prescribed by I.C. 6–1.1 is disapproved in the referendum under I.C. 36–2–15.

. . .

(f) The term of office of a township assessor is four (4) years, beginning January 1 after election and continuing until a successor is elected and qualified. However, the term of office of a township assessor elected at a general election in which no other township officer is elected ends on December 31 after the next election in which any other township officer is elected. . . .

(h) after June 30, 2008, the county assessor shall perform the assessment duties prescribed by I.C. 6–1.1 in a township in which the number of parcels of real property on January 1, 2008, is less than fifteen thousand (15,000).

Thus, as of July 1, 2008, the county assessor assumed the assessment duties previously performed by the township assessor in all townships having less than 15,000 parcels of real property, which includes the Huntington Township Assessor position held by Stoffel.

The specific duties of township assessors were governed by Indiana Code section 36–6–5–3. After January 1, 2008, this statute was amended to read that the township assessor "shall perform the duties prescribed by statute, including assessment duties prescribed by I.C. 6–1.1" unless "the duties of the township assessor have been transferred to the county assessor...." The township assessor duties were further impacted by HEA 1001/P.L. 146–2008, Sec. 829, which became effective on March 19, 2008, and which states that

Section 829 (Effective upon passage)

(A) Each elected township assessor and township trustee-assessor whose duties relating to the assessment of tangible property are assumed under this act by the county assessor shall organize the records of the township assessor's or township trustee-assessor's office relating to the assessment of tangible property in a manner prescribed by the department of local government finance and transfer the records to the county assessor as directed by the department. The department shall, before July 1, 2008, determine a procedure and schedule for the transfer of the records. A township assessor or township trustee-assessor shall complete the transfer of records and operations to the county

assessor before the date of transfer of duties described in this subsection.

(B) The assessors shall assist each other and coordinate their efforts to:

(1) ensure an orderly transfer of all township assessor and township trustee-assessor records to the county assessor; and

(2) provide for an uninterrupted and professional transition of the property assessment functions from the township assessor or township trustee-assessor to the county assessor consistent with the directions of the department of local government finance and this act.

. . .

On July 1, 2008, HEA 1001/P.L. 146–2008, Sec. 832 further amended the township assessor duties by stating

Section 832 (Effective July 1, 2008)

(a) This section applies to an elected township assessor:

(1) who before July 1, 2008, is:

(A) elected to; or

(B) selected to fill a vacancy in;

the office of elected township assessor; and

(2) for whom the county assessor performs the assessment duties prescribed by I.C. [§ ] 6–1.1:

(A) after June 30, 2008, under I.C. [§ ] 36–6–5–1(H), as added by this act; or

(B) after December 31, 2008, as the result of a referendum under I.C. [§ ] 36–2–15, as amended by this act.

(b) Notwithstanding any other provision of this act, an elected township assessor referred to in subsection (a) is entitled to remain in office until the end of the term to which the individual was elected or for which the individual was selected to fill a vacancy. The sole duty of the individual is to assist the county assessor in the transfer of records and operations from the township assessor to the county assessor under this act.

In April of 2008, the Indiana Department of Local Government Finance (DLGF) issued several memoranda directing the county assessors to take over the duties of the township assessors before July 1, 2008. Also, on May 9, 2008, the Indiana Attorney General issued an Official Opinion clarifying the transfer of assessor duties to county assessors under HEA 1001/P.L. 146–2008. In its Opinion, the Attorney General concluded that "where assessor duties are transferred to the county assessor, the office of elected township assessor is abolished *after* the expiration of the term for which the current elected township assessor was elected." (Appellant's App. p. 82). By the end of May of 2008, Huntington County had transferred all assessment duties, files, and materials to the County Assessor's Office.

On June 2, 2008, Stoffel filed a Verified Complaint individually and on behalf of a class of Indiana township assessors against defendants Governor Mitchell E. Daniels, the State of Indiana, Commissioner Cheryl Musgrave, and the Indiana Department of Local Government Finance (DLGF) (collectively, State Defendants). In her Complaint, Stoffel sought a declaration that HEA 1001/P.L. 146–2008, Sections 710, 711, 829, and 832 are unconstitutional. In addition, she also asserted claims for tortious interference and conspiracy to commit tortious interference. Thereafter, on June 4, 2008, Stoffel filed her Petition for Emergency Hearing on Verified Complaint for Declaratory and Injunctive Relief.

On July 22, 2008, the State Defendants filed a motion to dismiss pursuant to Indiana Trial rule 12(B)(6) and opposition

to Stoffel's request for an emergency hearing. On August 5, 2008, Stoffel filed a response to the State Defendants' motion to dismiss.

On August 20, 2008, Stoffel filed a Verified Amended Complaint. Six days later, on August 26, 2008, the trial court heard oral argument on Stoffel's petition and the State Defendants' motion to dismiss. On September 9, 2008, the State Defendants filed a motion to dismiss Stoffel's Amended Complaint to which Stoffel replied on September 25, 2008. Both parties submitted proposed findings of fact and conclusions of law to the trial court. On October 14, 2008, the trial court issued its Findings of Fact, Conclusions of Law, and Judgment, granting the State Defendants' motion to dismiss.[2]

Stoffel now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Stoffel pursues her claims at different levels, most important among them is her constitutional challenge against the General Assembly's enactment of legislation transferring the duties of township assessors to county assessors, thereby eliminating the need for certain township assessors. In a nutshell, as a township assessor herself, Stoffel contends that the legislature violated Articles 6 and 15 of the Indiana Constitution by abolishing an official position in the middle of an incumbent's term. Additionally, Stoffel pursues a claim for tortious interference by the General Assembly that interferes with the contractual relationship she has with her constituents. Procedurally, Stoffel asserts that the trial court erred when it decided Stoffel failed to present a redressable claim and failed to establish the prerequisites for preliminary injunctive relief.

### I. *Standard of Review*

This matter comes before us as an appeal of the trial court's grant of the State Defendants' motion to dismiss Stoffel's request for declaratory judgment. A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not of the facts supporting it. *Charter One Mortgage Corp. v. Condra*, 865 N.E.2d 602, 605 (Ind.2007). Thus, our review of a trial court's grant of a motion based on Indiana Trial Rule 12(B)(6) is *de novo. Id.* When reviewing a motion to dismiss, we view the pleadings in the light most favorable to the non-moving party, with every reasonable inference construed in the non-movant's favor. *Id.* A complaint may not be dismissed for failure to state a claim upon which relief can be granted unless it is clear on the face of the complaint that the complaining party is not entitled to relief. *Id.* Consequently, all allegations in the complaint must be accepted as true, and it is the appellate court's duty to determine whether the underlying complaint states "any set of allegations upon which the court below could have granted relief." *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1023 (Ind.Ct.App.2005), *trans. denied.* Dismissal of a complaint under Indiana Trial Rule 12(B)(6) is disfavored generally because such motions undermine the policy of deciding causes of action on

---

**2.** We note that the trial court adopted in whole the findings proposed by the State Defendants. Although a trial court is not prohibited from adopting a party's proposed order *verbatim,* this practice weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court. *See Safety Nat'l*

*Cas. Co. v. Cinergy Corp.*, 829 N.E.2d 986, 993 n. 6 (Ind.Ct.App.2005). This is particularly true when the issues in the case turn less on the credibility of witnesses than on the inferences to be drawn from the facts and the interpretation of case law. *See Prowell v. State*, 741 N.E.2d 704, 709 (Ind. 2001).

their merits. *Crosson v. Berry*, 829 N.E.2d 184, 189 (Ind.Ct.App.2005), *trans. denied.* Additionally, we are mindful that in reviewing a motion to dismiss in an action for declaratory relief, we need to take into account the purpose and objectives underlying declaratory judgment actions and the litigatory posture of the dispute. *Volkswagenwerk, A.G. v. Watson*, 181 Ind.App. 155, 390 N.E.2d 1082, 1084 (1979).

## I. Constitutional Challenge

Stoffel's main argument is based on the Indiana Constitution and focuses on the timing as to when the statutory changes to the position of township assessor can take effect. While she acknowledges that the General Assembly has the authority to pass laws modifying or even abolishing the statutorily-created position of township assessor, Stoffel maintains that it nevertheless is unconstitutional to approve statutory changes to the elected position during the elected incumbent's term in office, "especially if those changes would explicitly or implicitly alter the duration of the term for which the incumbent was previously elected or prevent the incumbent from fulfilling the duties for which the incumbent was elected by public vote." (Appellant's Br. p. 19).

■ When a party challenges a statute based upon a violation of the Indiana Constitution, our standard of review is well-settled. "Every statute stands before us clothed with the presumption of constitutionality until clearly overcome by a contrary showing." *Boehm v. Town of St. John*, 675 N.E.2d 318, 321 (Ind.1996). The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party. *Id.* If there are two reasonable interpretations of a statute, we will choose the interpretation that permits upholding the statute. *Hochstedler v. St. Joseph*

*County Solid Waste Mgmt. Dist.*, 770 N.E.2d 910, 917 (Ind.Ct.App.2002), *trans. denied.*

■ Moreover, we review the constitutionality of statutes with the understanding that "[t]he legislature has wide latitude in determining public policy, and we do not substitute our belief as to the wisdom of a particular statute for those of the legislature." *Boehm*, 675 N.E.2d at 321. Therefore, we do not declare a statute to be unconstitutional merely because we "consider it born of unwise, undesirable, or ineffectual policies." *Johnson v. St. Vincent Hosp., Inc.*, 273 Ind. 374, 404 N.E.2d 585, 591 (1980). Nevertheless, we are also mindful of our duty to enforce the Constitution as written and intended. *Boehm*, 675 N.E.2d at 321. Accordingly, "[w]here a law or the application of a law is challenged on constitutional grounds, the judiciary has the authority as well as the duty, to explore the constitutional ramifications of the law." *Id.*

■ Stoffel's argument that the General Assembly violated the Indiana Constitution when it abolished the township assessor position in the middle of the elected incumbent's term is premised on two different Articles of the Indiana Constitution. Article 6, Section 3 provides that township officers "shall be elected, or appointed, in such manner as may be prescribed by law." With regard to the duration of this public office, the Indiana Constitution provides in Article 15, Section 2, in pertinent part, that "[w]hen the duration of any office is not provided for by this Constitution, it may be declared by law; and, if not so declared, such office shall be held during the pleasure of the authority making the appointment." In addition, Article 15, Section 3 reads that "[w]henever it is provided in this Constitution, or in any law which may be hereafter passed, that any

officer, other than a member of the General Assembly, shall hold his office for any given term, the same shall be construed to mean, that such officer shall hold his office for such term, and until his successor shall have been elected and qualified."

Pursuant to the preceding provisions, the township assessor office is a position provided for in the Constitution but whose actual existence depends entirely on statutory action by the legislature. Because of this specific grant of authority to the General Assembly, only a prohibition emanating from the Constitution will prevent the legislature from exercising its explicit power to create and abolish legislative offices. *See State ex rel. Wadsworth v. Wright,* 211 Ind. 41, 5 N.E.2d 504, 506 (1937) (As offices continue at the will of the legislature, the legislature has the power to "abridge" the office or decrease the salary for the term for which the officer is elected as long as this action is not prohibited by State Constitution). However, Stoffel, in a very specific argument, seizes on Article 15, Section 3 of the Indiana Constitution and claims that the plain constitutional language which reads that "such officer shall hold his office for such term, and until his successor shall have been elected and qualified," supports her position that she is entitled to hold her office for the full four-year term. We disagree.

Our supreme court interpreted this exact constitutional provision in *Swank v. Tyndall,* 226 Ind. 204, 78 N.E.2d 535 (1948). Initially, focusing on the nature of Section 3, the *Swank* court characterized the term "and until his successor shall have been elected and qualified" as a "contingent and defeasible term-contingent, meaning something that may or may not

happen, and defeasible in that it is capable of being or liable to be avoided, overruled or undone; the usual way this occurs is by the expiration of the prescribed term, the legal election of a qualified successor and his qualification as such official." *Id.* at 538 (internal citations omitted). As such, the supreme court determined that "[t]he constitutional purpose in the creation of this contingent defeasible term is not to add more time to the four year term provided by statute, in contravention of Art. 15, § 2, Indiana Constitution, but is solely to avoid a vacancy." *Id.* Having established the provision's character and purpose, the *Swank* court concluded that

> If we should hold that this constitutional contingent, defeasible term is a part of the statutory elective term of the officers involved, we would of necessity trespass upon Art. 15, § 2 of the Indiana Constitution. We cannot entertain the idea, that § 2 and § 3 of Art. 15[ ] are conflicting, but must consider that each is a part of one harmonious whole. When the elective term ends and no qualified person has been elected and qualified to take over the duties of the office, the person holding the office at the end of the elective term has a right and duty, commanded by Art. 15, § 3[ ] to hold the office and discharge its duties 'until his successor shall have been elected and qualified.' This service is not part of his elective term, but is a constitutional term granted to avoid a vacancy—and to assure an ever-continuing government in any and every emergency.

*Id.*[3]

Similarly, in *State ex. rel. Fares v. Karger,* 226 Ind. 48, 77 N.E.2d 746, 748 (1948),

---

**3.** In her brief, Stoffel treats this court to a lengthy excerpt from the *Swank* opinion. *See* Appellant's br. pp. 23–25. Based on her interpretation of our supreme court's language

in *Swank* that an official has the "right and duty to serve the definite and certain term for which he was elected," Stoffel purports *Swank* to support the premises of her claim.

our supreme court determined that "[t]he effect of the constitutional provision is to add an additional, contingent and defeasible term, to the original fixed term, and excludes the possibility of a vacancy, and consequently, the power of appointment, except in case of death, resignation, ineligibility, or the like." *Id.* at 748.

It was not until 1971 that our supreme court addressed the argument relied upon by Stoffel here. In *Dortch v. Lugar*, 255 Ind. 545, 266 N.E.2d 25, 34 (1971), *reh'g denied,* the court explicitly rejected the contention that Article 15, Section 3 should be construed as a "constitutional directive requiring of the Legislature that each elected officer be permitted to serve his full elective term with no right residing in the Legislature to terminate or alter said terms." In light of the *Dortch* decision, we cannot say that Article 15, Section 3 of the Indiana Constitution, on its own, provides support for Stoffel's claim.

Turning to the merits of Stoffel's general, overarching argument that an elected officer's office cannot be abolished in the middle of his term, we note that for more than one hundred years, Indiana case law has consistently established that the legislature has the determinative vote regarding the existence and duties of the elected office. In *Walker v. Peelle*, 18 Ind. 264, 264, 1862 WL 1991 (1862), Walker's term, as state printer, had been shortened by an act of the legislature. Responding to his argument that the legislature did not possess the power to alter his term of office, our supreme court declared that "as the office was created by [the legislature], that it is, in this particular, [it is] under its control." *Id.*

Approximately thirty years later, the supreme court used more forceful language in *State ex. rel. Yancey v. Hyde*, 129 Ind. 296, 28 N.E. 186 (1891), *reh'g denied,* where the court examined the General Assembly's authority to abolish the office of chief of division of mineral oils and state inspector of oils and create the office of state supervisor of oil inspection. *Id.* at 185–86. In confirming the principle that the legislature's constitutional power to create offices subsumes the concomitant power to abolish them, the *Yancey* court stated:

> Offices are neither grants nor contracts, nor obligations which cannot be changed or impaired. They are subject to the legislative will at all times, except so far as the constitution may protect them from interference. Offices created by the legislature may be abolished by the legislature. The power that creates can destroy. The creator is greater than the creature. The term of an office may be shortened, the duties of the office increased, and the compensation lessened by the legislative will.

*Id.* at 187–88 (internal quotation omitted).

More recently, this general rule was reaffirmed in *Corn v. City of Oakland City,* 415 N.E.2d 129 (Ind.Ct.App.1981). In *Corn,* the Oakland City Council abolished the office of city judge which the council had created by ordinance. *Id.* at 131. The ordinance would take effect at the end of the sitting judge's term. *Id.* Because "no constitutional, property or contract right . . . was violated" by the abolition of the office, we found that the City's action did not violate the Constitution. *Id.* at 134. In line with *Walker* and *Yancey,* we stated that "unless prohibited by the

*See Swank,* 78 N.E.2d at 539. We disagree with Stoffel's reasoning because the language quoted by Stoffel merely reinforces a public officer's right to serve the contingent, "holding over" term, until a new officer is elected in addition to his own term to which he was rightfully chosen by his constituents.

[C]onstitution, an office created by the legislature may be changed, enlarged, abridged, or abolished entirely by the legislature.... [A]bsent some constitutional prohibition, an office created by the legislature may be abolished by the legislature during the term of an incumbent." *Id.* at 132.

Despite this established case law, Stoffel maintains that no changes to statutorily-elected offices can go into effect in the middle of the incumbent's term in office. In support, she directs this court's attention to *State v. Monfort,* 723 N.E.2d 407, 409 (Ind.2000), *reh'g denied,* wherein the Indiana General Assembly abolished the Jasper Superior Court No. 2 in mid-term. Our supreme court declared the General Assembly's action to be unconstitutional and concluded that "although Article VII, § 1 of the Indiana Constitution gives the legislature the power to create and abolish courts, that power is limited by Article VIII, § 1, which provides for the separation of powers among the three branches of Indiana government." *Id.* at 414. Here, however, there is no allegation of legislative interference with the judicial branch nor does Stoffel raise a violation of the separation of powers doctrine.[4]

■ In sum, while the office of township assessor is provided for in the Indiana Constitution, its existence necessarily entails statutory action by the legislature. *See* Ind. Const. Art 6, § 3. As such, in light of the absence of a constitutional limitation, "the power to enact statutes necessarily entails the power to repeal or modify them." *Haverstock v. State Pub. Employees Ret. Fund,* 490 N.E.2d 357, 360 (Ind.Ct.App.1986), *trans. denied.* Therefore, the Indiana General Assembly has the authority to curtail the

duties, powers, and obligations of an elected township assessor, even during the middle of his elected term, and transfer these duties, powers, and obligations to the county assessor. We conclude that the trial court properly dismissed Stoffel's constitutional challenge because she failed to establish that the General Assembly exceeded its authority in consolidating and transforming the offices of county and township assessors.

## II. *Tortious Interference*

■ In addition to her constitutional challenge, Stoffel raised a claim of tortious interference which the trial court dismissed. By asserting a contractual right to her public office, Stoffel maintains that the General Assembly wrongly interfered with her employment when it abolished the township assessor's position mid-term.

■ Indiana has long recognized that intentional interference with a contract is an actionable tort. *Bilimoria Computer Sys., LLC v. America Online, Inc.,* 829 N.E.2d 150, 156 (Ind.Ct.App. 2005). The tort reflects the public policy that contract rights are property, and under proper circumstances, parties are entitled to enforcement and protection from those who tortiously interfere with those rights. *Id.* The five elements necessary for tortious interference with a contractual relationship are: (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach. *Id.*

---

4. Stoffel also references *Holland v. Ballard,* 270 Ind. 173, 383 N.E.2d 1032, 1034 (1978) in support of her argument that the legislature cannot abolish her office mid-term; however, she fails to develop an argument as to how *Holland* aids her claim.

We agree with the State Defendants that Stoffel's claim necessarily fails as there is no contractual relationship or obligation that can be interfered with. It is well-established that

> an office is a public charge, or employment, in which the duties are continuing and prescribed by law, and not by contract, and the office holder is invested with some of the functions pertinent to sovereignty, or having some of the powers and duties which inhere within the legislative, judicial, or executive departments of the government.

*State ex rel. Black v. Burch,* 226 Ind. 445, 80 N.E.2d 294, 299 (1948); *Mosby v. Bd. of Comm'rs,* 134 Ind.App. 175, 186 N.E.2d 18, 20 (1962); *Stuckey v. State,* 560 N.E.2d 88, 91 (Ind.Ct.App.1990), *trans. denied.* Generally, one who holds an elective or appointive position for which public duties are prescribed by law is a "public officer." *Mosby,* 186 N.E.2d at 20.

It is undeniable—and the parties do not dispute—that Stoffel was a public officer, holding an elective position whose duties were prescribed by statute. Our supreme court already held in 1881, in its *Yancey* decision, that "offices are neither grants nor contracts, nor obligations which cannot be changed or impaired. They are subject to the legislative will at all times, except so far as the [C]onstitution may protect them from interference." *Yancey,* 28 N.E. at 187. As such, Stoffel's relationship with her constituency is not based on a contract and her allegation of tortious interference with a contract must fail.

### III. *Redressability*

The State Defendants also sought dismissal of Stoffel's claim in part based on a purported lack of presenting a claim that could be redressed. Focusing on the redressability element of standing, the State Defendants asserted that Stoffel failed to establish that they directly caused her in-

jury which could be relieved. The trial court followed the State Defendants' argument in its Order and held that the DLGF and Governor Daniels could not provide relief for Stoffel's claims. On appeal, Stoffel now disputes the trial court's holding and maintains that the State Defendants are the proper parties from whom to seek redress.

Standing is a fundamental, threshold, constitutional issue that must be addressed by this, or any, court to determine if it should exercise jurisdiction in the particular case before it. *Alexander v. PSB Lending Corp.,* 800 N.E.2d 984, 989 (Ind.Ct.App.2003), *trans. denied.* The doctrine of standing requires a concrete adversity between the parties, that is, that the defendant caused plaintiff's injury and therefore the defendant is the proper party from whom to seek redress. *Id.*

However, challenging the constitutional validity of a statutory scheme by bringing a declaratory judgment action against the executive branch official charged with the statute's implementation is a well-recognized approach. It is within the province of the legislature to delegate authority to executive branch officials and administrative agencies. *State Bd. of Tax Comm'rs v. Indianapolis Racquet Club, Inc.,* 743 N.E.2d 247, 251 (Ind.2001). When executive branch officials and agencies act upon delegated authority, their actions are deemed to be the acts of the General Assembly. *Nagy v. Evansville–Vanderburgh Sch. Corp.,* 844 N.E.2d 481, 491–92 (Ind.2006). In this light, there is ample precedent where a plaintiff challenges the constitutional validity of a statutory scheme by bringing a lawsuit against the executive branch officials charged with implementing the challenged statutes. *See, e.g., D & M Healthcare, Inc. v. Kernan,* 800 N.E.2d 898 (Ind.2003) (nursing home facilities brought a declaratory ac-

tion against Governor Kernan contesting the constitutionality of a statute); *Indiana Dep't of Envtl. Mgmt. v. Twin Eagle LLC,* 798 N.E.2d 839 (Ind.2003) (State Department of Environmental Management was a defendant in a declaratory judgment action by developer seeking declaration that environmental laws passed by the legislature were unconstitutional); *Villegas v. Silverman,* 832 N.E.2d 598 (Ind.Ct.App.2005), *reh'g denied, trans. denied* (Commissioner of Indiana Bureau of Motor Vehicles, an executive entity, was the defendant in a declaratory judgment action by illegal aliens challenging the constitutionality of requirements for obtaining driver licenses and identification cards).

Specifically, the Indiana Constitution has vested the executive power of the State in a Governor. Ind. Const. Art. 5, § 1. Furthermore, pursuant to HEA 1001/P.L. 146–2008, Sec. 710 & Sec. 829, the DLGF was authorized to determine and implement a procedure and schedule for the transfer of records from the township assessor to the county assessor. As such, unlike the trial court we conclude Stoffel properly brought his declaratory judgment action against the State Defendants. We reverse the trial court in this respect.

### IV. *Preliminary Injunctive Relief*

■■■■ Lastly, Stoffel contends that the trial court erred by dismissing her claim for injunctive relief because the trial court found that she failed to establish all the elemental prerequisites to be granted temporary relief. Preliminary injunctions are generally used to preserve the *status quo* as it existed before a controversy, pending a full determination on the merits of the dispute. *U.S. Land Servs., Inc. v. U.S. Surveyor, Inc.,* 826 N.E.2d 49, 67 (Ind.Ct.App.2005). It is well settled that a trial court's use of discretion when granting or denying a preliminary injunction is dependent upon the following factors: (1) whether the remedies at law available to the party seeking an injunction are inadequate, thereby exposing that party to irreparable harm pending the resolution of the substantive action if the injunction does not issue; (2) whether granting the injunction would disserve the public interest; (3) whether the party has established a reasonable likelihood of success at trial by establishing *a prima facie* case; and (4) whether the injury to the party seeking the injunction outweighs the harm to the party who would be enjoined. *Avemco Ins. Co. v. State ex rel. McCarty,* 812 N.E.2d 108, 117 (Ind.Ct.App.2004).

■■■■ The moving party has the burden of showing, by a preponderance of the evidence, that the facts and circumstances entitle him or her to injunctive relief. *Indiana Family & Soc. Servs. Admin., Div. of Family and Children, Lake County Office v. Ace Foster Care and Pediatric Home Nursing Agency Corp.,* 823 N.E.2d 1199, 1204 (Ind.Ct.App.2005). If the plaintiff fails to prove any one or more of these requirements, the trial court's grant of a preliminary injunction constitutes an abuse of discretion. *Id.* Thus, we note that the power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare circumstances where the law and the facts are clearly in the moving party's favor. *Aberdeen Apartments v. Cary Campbell Realty Alliance, Inc.,* 820 N.E.2d 158, 163 (Ind.Ct.App.2005), *reh'g denied, trans. denied.*

We can easily dispose of Stoffel's claim. Turning to the third requirement,—a reasonable likelihood of success at trial by establishing *a prima facie* case—we already determined above that Stoffel's constitutional challenge was properly dismissed by the trial court. This holding alone preempts the entry of injunctive relief for Stoffel. Therefore, because Stoffel fails to meet this prerequisite, we need not evaluate the other three elements of in-

junctive relief. As a result, we affirm the trial court.

## CONCLUSION

Although we hold that Stoffel has standing to bring her claim, we nevertheless affirm the trial court as we conclude that (1) the trial court properly decided that the legislature has the authority to create, abolish and alter the duties of township officers during the middle of their term in office; (2) the trial court properly denied Stoffel's claim based on the theory of tortious interference; and (3) the trial court properly found that Stoffel failed to establish the prerequisites for being granted preliminary injunctive relief.

Affirmed.

KIRSCH, J., and BROWN, J., concur.