**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**YVONNE M. SPILLERS**
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE:

**MICHAEL H. MICHMERHUIZEN**
Barrett & McNagny LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE PATERNITY OF R.M.: | ) | |
| | ) | |
| LAURA K. CHIVERS | ) | |
| | ) | |
| Appellant- Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 02A05-1310-JP-496 |
| | ) | |
| JEFFERY L. MARQUARDT, | ) | |
| | ) | |
| Appellee- Respondent. | ) | |

APPEAL FROM THE ALLEN CIRCUIT COURT
The Honorable Thomas J. Felts, Judge
Cause No. 02C01-0408-JP-37

**August 15, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

L.C. (Mother) appeals from the trial court's order modifying custody and parenting time. She presents a number of issues, which we consolidate and restate as follows:

1. Did the trial court abuse its discretion by modifying custody?

2. Did the trial court err by failing to make required findings to support its decision to restrict Mother's parenting time to four supervised hours per week?

3. Did the trial court abuse its discretion by denying Mother's request to submit Child's counseling records following the close of evidence?

We affirm.

Mother gave birth to R.M. (Child) in December 2001.[1] Mother and J.M. (Father) lived together from before Child's birth until their relationship ended in 2004. Paternity was established in Father in January 2005, and Mother was awarded sole legal and physical custody of Child. Father was awarded parenting time in accordance with the Indiana Parenting Time Guidelines and ordered to pay support.

In the ensuing years, the parties' co-parenting relationship became highly contentious and was marked by frequent litigation. On January 12, 2011, Father filed a

---

[1] At the outset, we note that a number of deficiencies in Mother's statement of the facts have significantly hampered our review of this matter. For example, Mother often fails to support her factual assertions with citations to the record and relies upon evidence and testimony not favorable to the judgment. *See* Ind. Appellate Rule 46(A)(6) (providing that a statement of facts "shall be supported by page references to the Record on Appeal or Appendix" and "shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed"); *Green v. Green*, 843 N.E.2d 23, 26 (Ind. Ct. App. 2006) (explaining that when reviewing custody modification decisions, this court will "consider only the evidence most favorable to the judgment and any reasonable inferences from that evidence"). As a result of these deficiencies, Father has filed a motion to strike portions of Mother's brief. Although we would be within our discretion to strike portions of Mother's statement of the facts, we decline to do so in this case. Instead, because we decide this appeal in Father's favor, we deny as moot his motion to strike by way of a separate order issued contemporaneously with this decision.

petition to modify custody, support, and parenting time, in which he requested sole legal and physical custody of Child. On the same date, Father also filed a motion for a custody evaluation. The parties subsequently stipulated to a custody evaluation to be conducted by Dr. Stephen Ross.

On February 17, 2012, Father filed a petition for emergency temporary custody of Child. In the petition, Father alleged that on the previous day, Mother's sister had telephoned him, the Fort Wayne Police Department, Child's school, and the parties' attorneys. Mother's sister reported that as a result of a telephone conversation she had with Mother, she feared that Mother would harm herself or Child. Father also asserted that Child was currently in his care and that he did not know Mother's condition or whereabouts. A hearing was held before a judge pro tempore on the same day the petition was filed. Father appeared at the hearing with counsel, and although Mother did not appear, counsel appeared on her behalf.[2] At the conclusion of the hearing, the trial court awarded emergency temporary custody to Father.

The trial court held a *de novo* hearing on the issue of temporary custody on March 8, 2012, at which Mother and Father both appeared in person and with counsel.[3]

---

[2] The parties have not provided us with a transcript of the February 17, 2012 hearing. Mother has included in her Appellant's Appendix a single page that she asserts was taken from the transcript of that hearing. Due to the lack of a title page or certification from the trial court reporter, we are unable to confirm whether the excerpt was in fact taken from the transcript of that hearing. Moreover, the excerpt begins and ends midsentence, and the speaker is never identified. Thus, its import and relevance is difficult to discern.

[3] Again, the parties have not provided us with a transcript of this hearing. Mother has included in her Appellant's Appendix various pages purportedly taken from the transcript of the March 8, 2012 hearing, but she has again failed to include a title page or certification from the trial court reporter. Additionally, it is often unclear who is speaking, and many undoubtedly relevant portions of the hearing have been omitted.

Following the hearing, the trial court ordered that Father retain temporary custody of Child and that Mother have four hours of supervised parenting time at a local facility called Family Connections. The order specifically provided that Mother's parenting time was "subject to Family Connections' reasonable conditions and rules for supervised parenting time" and that "[b]oth parties shall fully cooperate with the parenting time supervisor." *Appellant's Appendix* at 57.

The trial court held a final hearing on Father's petition to modify permanent custody on August 1 and 2, 2013. At the hearing, evidence was presented concerning the events precipitating the emergency change in temporary custody. In 2009, Mother began treatment with a psychiatrist, Dr. Hani Ahmad. Dr. Ahmad diagnosed Mother with an anxiety disorder and panic attacks, and he prescribed .5 milligrams of Xanax to be taken twice daily as needed. On February 16, 2012, Mother overdosed on Xanax. Although Mother claims that the overdose was accidental and denies any suicidal intent, there is evidence in the record indicating that on the day of her overdose, Mother called her father and told him that he would not see her again. Mother also left a voicemail for her sister in which she threatened to harm herself. Mother's father was concerned for Mother's safety, so he called 911 and went to check on her at her home. Mother was ultimately transported to the hospital for treatment. Hospital records show that Mother told medical personnel that she purposely took four Xanax tablets, but that she did not think that was too much. Mother apparently also told medical personnel that she had been prescribed the Xanax just three days earlier, but also that she "only takes Xanax once or twice a month" and that she "has various bottles around the house that have a little bit of Xanax

4

in each of them, so she is never lacking for pills to take when she needs them." *Id.* at 43. Mother testified that she stopped taking Xanax immediately after the overdose, but Dr. Ahmad testified that he was writing her prescriptions up until November of 2012, when Mother asked to discontinue the Xanax for fear it would be used against her in court.

Evidence was also presented concerning Mother's supervised visits with Child at Family Connections. The visitation records show that there were four visits scheduled in April and May 2012. At the first visit, on April 10, 2012, Child was initially very uneasy around Mother, but became more comfortable as the visit progressed. At the second visit, on April 17, 2012, Child was very angry with Mother. When Mother told Child that she had left several messages for Child and wanted Child to call her back, Child responded that she had called Mother back, but Mother had not answered, which Mother denied. Child stated "I don't want to call you. Dad makes me!". *Appellee's Appendix* at 19. The parenting time supervisor intervened and stated that they were not to talk about phone calls any longer. Child also accused Mother of breaking a window at Father's house, which she denied. Child also stated that Mother had intentionally overdosed and told Mother "I don't want to live with you. Why do you keep trying to get me? I don't want to live with you. I like it at dad's house. I'm healthy at dad's house. I'm happy at dad's house. I don't get sick anymore." *Id.* at 20. Mother became angry and defensive, and the parenting time supervisor removed Child from the room. While Child was outside the room, Family Connections Supervisor Tonya Reilley spoke to Mother and provided her with ideas on how to redirect Child to more positive subjects. Reilley told Mother that if she became combative, defensive, or angry with Child, the visit would be

terminated. Mother stated that she understood, but that she was extremely angry with Child. Child was then brought back into the room, and Mother was distant and gave curt responses to Child for the rest of the visit.

On April 20, 2012, Mother called Family Connections and stated that she was cancelling her visits because she was getting a new job and was unsure of her schedule, and also because the visits were uncomfortable and not beneficial for her or Child. On May 17, 2012, Mother called Family Connections and asked to resume visitation. Family Connections representatives decided that visits would be limited to one hour per week until Mother showed consistency in her visits. The next visit took place on May 22, 2012. When Child was brought into the room, Mother was writing in a notebook and did not acknowledge Child. Child then sat down and began reading a book. When Mother asked Child what she was reading, Child responded "Nothing." *Id.* at 25. Mother then told the parenting time supervisor that she was "not going to engage [Child] in conversation. I'm not going to make her talk. It's obvious she doesn't want to see me." *Id.* The parenting time supervisor responded that the visit was over and took Child back to Father. The entire visit lasted seven minutes.

Another visit was scheduled for May 29, 2012. When the parenting time supervisor went to get Child from the waiting room, Child was visibly distressed. Child was curled up in a fetal position, shaking, and clutching a book so tightly that her knuckles were white. When the parenting time supervisor asked Child what was wrong, she responded that she did not want to see Mother. The visit was cancelled due to

6

Child's emotional state. Thereafter, Reilley suspended Mother's visitation, and Mother never again contacted Family Connections to resume visitation.

Dr. Ross testified at the hearing and his custody evaluation was admitted into evidence. Dr. Ross had spoken to the parties and Child both before and after Child was placed in Father's custody on a temporary basis. He noted that prior to the change in temporary custody, Child expressed a desire to stay with Mother and stated that Father was putting words in her mouth and trying to change her mind. After the change in temporary custody, however, Child expressed an adamant desire to stay with Father. Notably, Child told Dr. Ross that there were frequent arguments in Mother's home and that she had observed Mother taking pills. Child reported that on one occasion, Child's friend's mother had to drive Child home from a music lesson because Mother had taken medication. She also stated that Mother often had difficulty waking up in the morning, which caused Child to be late to school several times. Dr. Ross noted that Child had told her counselor that she did not feel safe with Mother because Mother "takes a lot of medicine" and "acts funny." *Id.* at 89. Dr. Ross also noted a police report indicating that Mother had caused a disturbance at her former attorney's office by "yelling and throwing things." *Id.* at 96. Additionally, Child's elementary school teacher reported that Mother had "verbally attacked" her at a parent-teacher conference in the presence of Child and many other students and parents. *Id.* at 103. On another occasion, around the time Father was awarded temporary custody, Mother tried to pick up Child from school. By her own admission, Mother became "extremely angry and out of control" when told she could not leave with Child. *Id.* at 68. Dr. Ross also testified concerning the results of

7

psychological testing he conducted on the parties, noting that Mother's test results raised concerns about impulse control and general emotional stability.

Dr. Ross ultimately recommended that Father be awarded legal and physical custody of Child. Specifically, he expressed concern over Mother's "erratic behavior" and "decline of psychological functioning[.]" *Id.* at 116. Dr. Ross noted that Child had originally stated that she wanted to stay with Mother and then changed her mind, and he expressed concern that Father and his wife, L.M., (Stepmother) might, either consciously or subconsciously, portray Mother in a bad light to Child. Dr. Ross noted further, however, that Mother has "engaged in her own campaign to denigrate [Father]". *Id.* at 116. Dr. Ross recommended that Mother and Child meet with an independent mental health practitioner to assist them in establishing a healthy relationship. Dr. Ross also recommended that Mother meet with a therapist to discuss her role in the problems that have interfered with her relationship with Child.

On September 10, 2013, the trial court entered an order awarding custody to Father and ordering Mother to participate in therapeutic supervised parenting time for a period of six months. The trial court also scheduled a status hearing for March 10, 2014, at which time it would "determine a permanent order for parenting time." *Appellant's Appendix* at 83. Mother now appeals.

1.

Mother first argues that the trial court abused its discretion when it modified physical and legal custody in Father's favor. Our standard of review is well settled:

8

When reviewing a custody determination, we afford the trial court considerable deference as it is the trial court that observes the parties' conduct and demeanor and hears their testimonies. *Kondamuri v. Kondamuri*, 852 N.E.2d 939, 945–46 (Ind. Ct. App. 2006). We review custody modifications for an abuse of discretion "with a preference for granting latitude and deference to our trial judges in family law matters." *Werner v. Werner*, 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011) (quoting *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009)), *trans. denied*. We will not reweigh the evidence or judge the credibility of witnesses. *Kondamuri*, 852 N.E.2d at 946. Rather, we will reverse the trial court's custody determination based only upon a trial court's abuse of discretion that is "clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom." *Id.* "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (quoting *Brickley v. Brickley*, 247 Ind. 201, 210 N.E.2d 850, 852 (1965)).

*In re Paternity of C.S.*, 964 N.E.2d 879, 883 (Ind. Ct. App. 2012), *trans. denied*.

Pursuant to Ind. Code Ann. § 31-14-13-6 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly), a trial court may modify a child custody order only upon a showing that modification is in the child's best interests and that there has been a substantial change in one or more of the factors that the court may consider under I.C. § 31-14-13-2 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly).[4]

---

[4] We note that both the trial court and Father on appeal mistakenly cite Ind. Code Ann § 31-17-2-8 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly), which applies to custody decisions in dissolution actions. The statutes governing child custody in paternity proceedings are found in Article 14 of Title 31. Although the citation to I.C. § 31-17-2-8 is technically incorrect, the error is of no consequence here because I.C. § 31-17-2-8 and I.C. 31-14-13-2 are identical in substance, and nearly so in wording.

9

I.C. § 31-14-13-2 provides that the court "shall consider all relevant factors," including specifically the following:

(1) The age and sex of the child.
(2) The wishes of the child's parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
    (A) the child's parents;
    (B) the child's siblings; and
    (C) any other person who may significantly affect the child's best interest.
(5) The child's adjustment to home, school, and community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

Mother argues that the trial court abused its discretion in concluding that there had been a substantial change in circumstances supporting a modification of custody. Mother's main contention is that the trial court improperly relied on her Xanax overdose as the determinative factor in its decision to modify custody. Mother contends that the incident was a "one-time, accidental overdose" and that the trial court "should not use this isolated incident against Mother," but should instead "assign greater weight" to other evidence in Mother's favor. *Appellant's Brief* at 11, 12.

Mother's argument is largely a request to reweigh the evidence, which we will not do on appeal. Moreover, we can find no support for Mother's contention that her overdose was the determinative factor in the trial court's modification decision. As noted above, Dr. Ross's report and the reports of Mother's supervised visitation at Family Connections indicated that there was extreme tension between Mother and Child, and

Child expressed a desire to live with Father. Moreover, Dr. Ross testified that he had conducted psychological testing on Mother, which had raised concerns about Mother's emotional stability. In his report, Dr. Ross noted that

> [t]he apparent decline of [Mother's] psychological functioning over the course of this evaluation process is noteworthy. Whether or not her behaviors at her previous attorney's law office or at [Child's] school is [sic] due to an accidental overdose on benzodiazepine medication is of lesser importance when considering her level of decline of psychological functioning over the course of this evaluation. Furthermore, the mental health professionals who have been involved in this case have observed [Mother's] erratic behavior. In consideration of her psychological test results of recent, this is of concern.

*Appellee's Appendix* at 116. In sum, we see no indication that the trial court relied exclusively, or even primarily, on Mother's drug overdose to establish the requisite substantial change in circumstances necessary to support the custody modification. Rather, it seems apparent to us that the main factors relied upon by the trial court were the deterioration of Mother's relationship with Child, the decline in Mother's psychological functioning, and Child's desire to live with Father.

Nevertheless, Mother argues that she should have retained custody of Child because any breakdown in her relationship with Child is attributable to Father's misconduct. *See Meade v. Levett*, 671 N.E.2d 1172, 1177 (Ind. Ct. App. 1996) (providing that the substantial change in circumstances necessary to support a custody modification "cannot be the result of that parent's misconduct with regard to custody" because such a result would "reward the parent for misconduct"). Specifically, Mother contends that "Father's behavior since the emergency temporary custody order issued February 17, 2012, can only be described as completely freezing out the Mother from

11

all communication." *Appellant's Brief* at 13. We disagree. It appears that much of Mother's argument is based on the unsupported proposition that when Family Connections suspended Mother's supervised parenting time and prevented Mother from discussing certain subjects deemed inappropriate for Child, it was "follow[ing] the direction of the Father[.]" *Appellant's Brief* at 13. There is simply no evidence to support this claim. Tonya Reilley, the supervisor of the Family Connections program, testified that she suspended Mother's supervised visitation due to Mother's inappropriate behavior and Child's emotional distress during visits. Reilley testified further that after the visits were suspended, Mother never contacted her to try to resume visitation. There is simply no evidence to suggest that Reilley or the parenting time supervisors were ever acting at Father's behest. In short, Father was not responsible for the suspension of Mother's supervised parenting time.

In further support of her claim that Father committed misconduct, Mother notes that Father took Child to Disneyland shortly after he was awarded temporary custody and that Father spent a substantial percentage of his income on attorney fees and other litigation expenses related to this matter. The relevance of this information to Mother's claim of misconduct is not readily apparent. Finally, Mother notes that Father blocked telephone communication and intercepted some of the letters she sent to Child, but she ignores Father's testimony that he did so upon the recommendation of Child's counselor as a result of Mother's inappropriate communications and Child's negative emotional responses. For example, the record shows that Mother sent child a copy of a medical record purportedly showing that Mother's Xanax overdose was unintentional. Moreover,

12

Father testified that he has tried to encourage a healthy relationship between Mother and Child, but that Child does not want to speak to Mother. Under these circumstances, we cannot conclude that the trial court abused its discretion in declining to find that any substantial change in circumstances was the result of Father's misconduct. The trial court's decision to modify custody was amply supported by the evidence and not an abuse of discretion.

2.

Next, Mother argues that the trial court abused its discretion by restricting Mother's parenting time without making certain findings required by statute and the Indiana Parenting Time Guidelines. We need not address this issue because it has been rendered moot. "Generally, an issue is deemed to be moot when the case is no longer live and the parties lack a legally cognizable interest in the outcome of its resolution or where no effective relief can be rendered to the parties." *Lake Cnty. Bd. of Elections & Registration v. Copeland*, 880 N.E.2d 1288, 1291 (Ind. Ct. App. 2008). "When the principal questions in issue have ceased to be matters of real controversy between the parties, the errors assigned become moot questions, and the court will not retain jurisdiction to decide them." *Woolley v. Washington Tp. Of Marion Cnty. Small Claims Court*, 804 N.E.2d 761, 764 (Ind. Ct. App. 2004).

The September 10, 2013 parenting time order from which Mother has appealed specifically provides that it would be in effect for six months. The order provided further that a status hearing would be held on March 10, 2014, at which time the court would "determine a permanent order for parenting time." *Appellant's Appendix* at 83. The

13

parties agree that this temporary parenting time order has now been superseded by a permanent order entered on March 27, 2014, a copy of which Father has included in his appendix. Because the parenting time order set forth in the trial court's September 10, 2013 order has expired by its own terms, this court can render no effective relief, and any deficiencies in that portion of the order are therefore moot.[5]

3.

Finally, Mother argues that the trial court abused its discretion by excluding Child's counseling records. As an initial matter, we note that Mother has incorrectly framed the issue. The trial court did not exclude the counseling records, as they were never offered into evidence. Instead, the trial court declined Mother's request to submit the counseling records after the conclusion of the hearing. Mother cites no legal authority whatsoever to support the argument that the trial court's decision in this regard was error. Her argument is therefore waived for failure to make a cogent argument. *See* Ind. Appellate Rule 46(A)(8) (requiring that contentions in appellant's brief be supported by cogent reasoning and citations to relevant authority); *Dickes v. Felger*, 981 N.E.2d 559, 562 (Ind. Ct. App. 2012) (noting that "[a] party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record").

We note further that, under the same issue heading, Mother makes a number of additional arguments that are difficult to understand and, at best, tangentially related to

---

[5] Mother complains that the March 27, 2014 order suffers from the same deficiencies as the previous temporary order. We note, however, that Mother has apparently not appealed that order.

14

the question of the admission of Child's counseling records. For example, Mother suggests that the trial court erred by (1) denying Mother's request that Stepmother be required to execute a "DD Form 214," which Mother asserts would "allow for the release of [Stepmother's] mental health records from the military"; (2) not allowing sufficient time for the parties to present their cases (even though Mother raised no objection on this basis below); (3) offering Father a mistrial when he complained that he had not had enough time to present his case (which he declined), but not making Mother the same offer; and (4) not limiting Father's discovery of Mother's mental health records. These arguments are too poorly developed to be fully understood and Mother cites no authority to support them.[6] *See Thacker v. Wentzel*, 797 N.E.2d 342, 345 (Ind. Ct. App. 2003) (explaining that this court "will not become an advocate for a party, nor will we address arguments which are either inappropriate, too poorly developed or improperly expressed to be understood" (citation omitted)).[7]

Judgment affirmed.

VAIDIK, C.J., and MAY, J., concur.

---

[6] The only authority Mother cites in this section of her brief is a local rule providing that "[i]f a case pending before the Court involves parenting time issues, the Indiana Parenting Time Guidelines require mediation unless otherwise ordered by the Court." Allen County Local Rule 733. According to Mother, the trial court violated this rule by waiving mediation in this case. We find Mother's argument puzzling, given that the rule specifically acknowledges that trial courts may order that mediation be waived.

[7] We also note that in her reply brief, Mother argues for the first time that "the totality of the circumstances in this case yields a manifest abuse of discretion by the trial court." *Reply Brief* at 4. Because Mother did not raise this issue in her principal appellate brief, it is waived. *See Showley v. Kelsey*, 991 N.E.2d 1017, 1021 n.2 (Ind. Ct. App. 2013) (noting that "it is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived"), *trans. denied*. In any event, we note that under this issue heading, Mother generally rehashes the arguments set forth in her principal appellate brief under the issue heading relating to the "exclusion" of Child's counseling records. Although Mother has added a handful of case citations, the effort comes too late and, in any event, is not enough to render her arguments cogent.